VANATTA *against* ANDERSON.

IN ERROR.

1811.

*Philadelphia,*
*Tuesday,*
April 2.

UPON a writ of error to the Common Pleas of *Philadel-phia*, it appeared that a judgment had been signed against *Vanatta* the defendant below, for want of an affidavit of defence, agreeably to the following rules of that court: " *April* 17th, 1809. It is ordered that in all actions brought or " to be brought in this court, of debt or contract, the plaintiff " shall be at liberty to direct judgment of course to be en- " tered at the third term, unless the defendant or some per- " son for him or her, shall make affidavit and previously file " the same in the clerk's office, that to the best of his or her " knowledge and belief there is a just defence in the said " cause; and if the defence be to part only, the defendant " shall specify in such case the sum in dispute, and judgment " shall be entered for so much as shall be acknowledged to " be due to the plaintiff, and the trial shall proceed for the " residue of such debt or demand; and in all actions of debt " and contract now at issue on the docket of the court of " Common Pleas, judgment shall be entered at *September* " term next, unless affidavit of defence be previously filed in " the prothonotary's office, in the manner aforesaid." On the 13th *July* 1809, the court made a supplemental rule, that " the rule of the 17th *April* should not extend to any suit " brought and depending previous to that day;" and on the 31st *March* 1810, they made an order, that " where a judg- " ment had been entered at the third term for want of an affi- " davit of defence, and a declaration had not been filed at " the second term, the judgment was irregular." The error was assigned in the entering of the judgment, upon the gen-eral ground that the Common Pleas had no authority to make such a rule.

Under the general power of the Common Pleas to regulate its practice, it has authority to make a rule, requiring of defendants an affidavit of defence, and directing judgments to be entered against them, if the affidavit is not filed within a certain time.

| Binney. | |
|---|---|
| 3b | 417 |
| 184 | 532 |
| 3b | 417 |
| 139 | 107 |
| 3b | 417 |
| 178 | 500 |

| 3 B | 417 |
|---|---|
| 206 | 373 |
| e206 | 517 |

| 3 B | 417 |
|---|---|
| 26 SC | 437 |

*Browne, M. Levy,* and *Ingersoll* for the plaintiff in error, argued, 1. That the rule was contrary to the constitution. 2. That it was contrary to one or more acts of assembly. 3. That it was unjust and inequitable in its operation, and the court below had no authority to make a rule of that character.

1811.

VANATTA
*v.*
ANDERSON.

1. The constitution secures to every person who asks it, a trial by jury, upon the same terms on which it was given before. In this case the declaration was filed, and the cause was at issue for the jury. Before the constitution, there can be no doubt, that the defendant would have been intitled to a trial; and if he may now be put to an oath, in order to obtain it, it is easy to perceive that this may be made a precedent to destroy the right in all cases. Trial by jury does not remain as heretofore, unless that trial may be had upon the same terms, and in the same cases as heretofore.

2. The legislature did not intend to trust the Common Pleas with this kind of judicial legislation. The Supreme Court may have a colorable right to make such a rule, because they are expressly impowered by the act of 25th *September* 1786, 2 *St. Laws* 471., to make and establish such rules for regulating the practice of this court, and *expediting the determination of suits,* as they in their discretion shall judge proper. And the same power is given in relation to the Circuit Courts by the act of 20th *March* 1799. 4 *St. Laws* 367. But the Common Pleas are not invested with so extensive a power. They may have by implication a power to regulate their practice; but that does not comprehend the power in question. The practice consists of such rules as regulate the time and order of certain proceedings preparatory to the final decision of a cause by court or jury; but it is not the final decision of the cause itself. If it be, then under the authority to make rules of practice, lies concealed a most dangerous authority to appoint the mode of trial, and to take away jury trial altogether. Even this court, notwithstanding the act of assembly, have not established the affidavit rule, as a general rule of the court. They have inforced one of the same kind against all the attorneys of the court who agreed to abide by it, but never against those who refused to make that agreement. It approaches too near to the trial of a cause, to exact an oath as to the merits from the defendant, or in other words, to interrogate him, as upon a bill in chancery. The legislature have negatived the right to purge the defendant's conscience in any other case, by requiring that an affidavit of defence shall be given to intitle

him to a special jury; 2 *St. Laws* 691.; and the act of 21st *March* 1806, 7 *St. Laws* 561. *sec. 5.*, is also strong to this point, as it recognises a trial by jury in every case except where a judgment is confessed, the plaintiff is nonsuited, or there is a judgment by default against the defendant, for want of appearance. There is no warrant in the practice of the *English* courts for such a judgment as this. 3 *Bl. Comm.* 395-6.

3. The rule is unjust and unequal. It requires the defendant to swear, where he may be wholly ignorant of the cause of action. The declaration is of no importance. It need not be filed until the second term, which may last until the day before the third term, when the affidavit must be entered; and even when filed, it may be and frequently is so general as not to indicate the cause of action. It is a snare for the consciences of men. Where you sow oaths, you reap perjuries. It is a convenience to an intrepid swearer, it is a denial of justice to a timid one. It compels defendants to sanction their defence by an oath, under the pretence of avoiding delay to the plaintiff, but it does not compel plaintiffs to sanction their claim by an oath, to avoid vexation and expense to the defendant. It is the exercise of an inquisitorial power, with no other view than in a small degree to mitigate the evils of delay, when a strict and punctual execution of the law would be a much more certain and less dangerous remedy. If the Common Pleas have a right to make rules of practice, still they cannot institute any rules which are contrary to equity.

*Sergeant* for the defendant in error. The present was the case of a sum certain due at a certain day by express covenant, the *narr.* was filed, the issue was joined, and judgment was entered for the plaintiff, because the defendant would not swear that he believed he had a defence. It is a fair case for the discussion of the rule.

1. A repeated reference to the constitution, where its application to the case in question is doubtful, and where the importance of the cause will not warrant the interposition of this high authority, is a great injury to the constitution itself; it weakens its effect, by diminishing the respect in which it

is held. Certainly the constitution did not mean that a defendant who did not believe that he had a defence, that he had something to try, should have the benefit of a jury trial. A rule to plead in eight days, would upon the ground which has been taken, violate the constitution, because the party had six weeks before it was passed. The *oath* in this point of view is of no importance; the interposition of any new form or ceremony may equally be the subject of complaint; and if the complaint be just, all the rules of practice must be considered as unchangeably fixed by the constitution, as they stood at that epoch. This point cannot be maintained.

2. The expediency of the rule does not appear to be a question before this court. It was made at the instance of the attorneys of the Common Pleas, and the judges of that court are undoubtedly the best judges of its expediency, and whether the good which results from it is counterbalanced by the hardship and inconvenience. [TILGHMAN C. J. I do not think you need labour the question of hardship. If the court have power to make the rule, they are responsible for the exercise of it.] That is certainly the only point. I assume it then as an incontestable principle, that the Common Pleas, and every other court, has by its very constitution as a court, the right to make rules for the regulation of the practice. It would be impossible otherwise to proceed a single step without a legislative direction. The acts of 25th *September* 1786, and 20th *March* 1799, are therefore merely declaratory. They give no power which the judges of this court would not have had without them; and if under those acts this court would have authority to adopt such a rule as this, the Common Pleas may do it without such acts. To obviate this argument, it is said that the rule is not a rule of practice. But if not, it is difficult to say what it is. It regulates the business of the court in two important points, the trial of issues, and the signing of judgments. If it is not a rule of practice, because unless it is observed a final disposition is made of the cause, then rules to plead, to declare, to try, are not rules of practice, because the penalty of neglect is a judgment of some sort or other. It has been adopted as a rule of practice in this court since 1795. If it is of a nature to change the fundamental rules of law, or the principles of evi-

dence, or to affect the property of a suitor, upon what ground has this court inforced it against those who signed the agreement, and many too who never signed the agreement, but have come to the bar since it was made? If it is not a rule of practice, it is a rule interfering with the absolute rights of a party; and whether attorneys agree to it or not, this court cannot inforce it. The judges have also inserted it among the first rules of practice instituted for the Circuit Courts; which was in effect a decision by all the judges that it was a rule of practice. What right of the defendant does it abridge? It only imposes a term, which may be complied with without violating the most tender conscience. It is referred to his own conscience, whether he has a just and legal defence, (which in fact are the same thing) according to the best of his knowledge and belief. No one could say that it was a violation of any right, if the defendant were called upon to file a certificate in writing, that he had a defence; the only objection is therefore to the oath. But as to that, in numerous cases, both the legislature and our courts have thought proper to demand it; the former, to obtain a *certiorari* to a justice, to appeal from an award of arbitrators, to put a cause upon the special jury list; the latter, in cases of bail, in foreign attachments, and in all cases of dilatory pleas. The act of assembly says that any person may issue a foreign attachment against the effects of an absentee, but still, if he will not swear to his cause of action, the attachment will be quashed. The case of dilatory pleas appears to be decisive. We have no statute requiring the defendant to swear to them, but this court has nevertheless adopted it as a rule of practice since the year 1788. In fact the rule in question is in substance no more than a determination by the court to consider all pleas and proceedings on the part of the defendant as dilatory, unless he swears to a defence, which is swearing that his object is not delay. In *Barry* v. *Randolph* (a) this court were of opinion that the Common Pleas might impose upon the party who appealed from the award of arbitrators, a term which was not imposed upon him by the act of assembly; and they directly affirmed the right of that

(a) *Supra.* 277.

court to make rules of practice for the government of all cases within their jurisdiction. The affidavit rule, whatever may have been its evils, has been of infinite convenience, and to decide at this day that it is illegal, would reverse a vast number of judgments which have been signed under it.

TILGHMAN C. J. This is a writ of error to the court of Common Pleas of the county of *Philadelphia*, and it appears that judgment was entered under a rule of that court, because the defendant did not, before the third term from the commencement of the action, make an affidavit, that " to the " best of his knowledge and belief, there was a just cause of " defence in the said action." It is contended on behalf of the plaintiff in error, that the court of Common Pleas had no power to make this rule, because it is not within the general power which every court of record possesses, to make rules for the regulation of the practice, and because it is contrary to the constitution of the commonwealth, by which it is provided, that the trial by jury shall be as heretofore.

As to the objection on the ground of the constitution, it does not appear to me to be well founded. The rule makes no alteration in the trial by jury, but only provides that previous to the trial, the defendant shall swear or affirm, that to the best of his knowledge and belief, he has a just cause of defence. There has been a rule of long standing, that a dilatory plea, shall not be put in without oath. This rule is not complained of; and yet, as far as the constitution is concerned, it is as much a violation of the trial by jury, as the other; for the defendant has as much right to insist on the trial of a *dilatory* plea, without oath, as a plea to the merits. The constitution makes no difference between them, nor does it make any mention either of one or the other.

The second and more difficult point, is whether this rule falls within the general power of the court to make such regulations as shall facilitate the transaction and despatch of business. Much has been said concerning the policy and effects of the rule. I have no doubt but it was intended to do good, and has done good, by expediting judgments in cases where there was no ground for dispute. Nor have I any doubt, but that in some cases it has produced perjury.

There will be perjury, where there are oaths, but this does not prove that all oaths are useless. The first rule of this nature, in any of our courts, originated in *this* court, in *September* 1795, when all the attorneys except two, signed an agreement, that they would confess judgment, unless the defendant made an affidavit of defence, similar to that prescribed in the rule of the Common Pleas. This agreement has been frequently inforced, except against those who refused to sign it, and who never *gave* or *took* any judgment under it. Some years after the making of this agreement, with full experience of its effects, the judges of this court made a similar rule for the Circuit Court, which was held by them, and it was practised under for many years without objection. It is true, that this court is expressly authorized by the sixth section of the act of 25th *September* 1786, to make such rules for regulating the practice and expediting the determination of suits, as the judges shall think necessary. I do not know that the Common Pleas have such power by act of assembly; but yet it is not denied that they have power from the nature of their constitution, to make rules for the regulation of their practice. They have always done it, it seems necessary that they should do it, and it would disturb the property and peace of the country to deny it. But is this properly a rule for regulating the practice? It is not very easy to mark the line, where the regulation of the practice ends. But certainly this court have conceived it to fall within that description, otherwise they ought not to have inforced the agreement of the attorneys, nor to have made the rule for the Circuit Court which I have mentioned. Considerable deference also, is due to the almost unanimous opinion of the bar. To regulate the practice, is to prescribe the manner of conducting the proceedings in courts of justice, the time of putting in the several pleadings, &c. Regularity, justice and despatch, are the great objects of the rules, and it is certain that in some cases oaths have been thought necessary. The case of dilatory pleas has been mentioned. By the twenty-fifth rule for regulating the practice made by the presidents of the several courts of Common Pleas, soon after their organization under the present constitution, if a warrant of attorney to confess judg-

ment be above ten years old, judgment cannot be entered without an *affidavit* of the due execution of the warrant, the nonpayment of the debt, and the life of the party. The oath of the plaintiff is necessary for holding the defendant to special bail; and so it is, for supporting a foreign attachment, although there is no act of assembly requiring such oaths. In matters which fall within their jurisdiction, the power of the court of Common Pleas is as full, as the power of this court. It is remarkable that many regulations of the practice, with respect to bail, dilatory pleas &c., which were introduced into *England* by *statute*, have been the objects of *rules of court* in this country. They have been generally acquiesced in. Should any of them be found inconvenient, it is in the power of the legislature to annul them. But it will rarely happen, that a court should persist in keeping a rule in force, after experience of its ill effects. The *consequences* of declaring this rule to be against law are not to be disregarded. Hundreds, nay perhaps thousands of judgments would be liable to reversal. If the rule was *clearly void*, we should have no right to consider consequences; but if the question is doubtful, it is our duty to do so. If the matter was to be now proposed for the first time, if this court were deliberating whether they should make a rule of this kind, I should have great hesitation. But after all that has passed, I cannot say that the rule is void. I am therefore of opinion, that the judgment should be affirmed.

YEATES J. concurred with the Chief Justice.

BRACKENRIDGE J. A delay of the plaintiff's suit is given by the common law to a certain extent. This, with an eye to an accommodation with the adverse party, by giving time to make terms or satisfy. This is called an *imparlance*, or opportunity of speaking with him. An *appearance* being made, declaration filed, and an imparlance prayed and allowed, a plea can be demandable at the next term; which plea, unless dilatory, as to the jurisdiction of the court from the place where, or the thing which, or in disability of the person of the plaintiff, or in abatement for misnomer &c., need not be on oath, which is not enjoined or imposed, or called for, unless to matters of fact short of the merits; and

this exception as to dilatory pleas, and which goes merely to the putting off the trial of the merits, and gaining time, is by act of parliament. Under this act of parliament extended here before the revolution, or depending solely on the rule of the Supreme Court, an oath in the case of a dilatory plea has been demandable from an early period; and it may be proper that it should be so, from whatever authority derived. But farther than what respects a dilatory plea, I am not clear that it has been expedient to go. Nor do I think the act of the legislature impowering the court to make rules and regulations, ought to be construed as extending to matters that require an oath of the party *respecting the merits;* but rather to the practice with respect to the preparatory steps of *compelling an appearance, obtaining a plea, and trial of the issue.* But the construction put upon it by the courts, has been different; and under such circumstances as render such construction acceptable, and in which there seems to have been for a great length of time an acquiescence. The mischief that would follow on declaring what has been done under those rules void, would amount to a general inconvenience, to which consideration, mischief in a particular case must give way.

As to what has passed therefore under these regulations, there must be silence; more especially as it must be understood, that the power of the court to make such rules is considered as *questionable only*, not as clearly unfounded. But if common right is against the rule, may it not be advisable for the bar, under a due regard to the weakness or wickedness of human nature, to consider the expediency of withdrawing that agreement which would seem to have given rise to the rule. Notwithstanding a precedent of such continuance, may not a revision of the rule by the courts themselves be considered as still open? Certain it is that the making *an affidavit of defence*, is embarrassing to a tender, and insnaring to a hardy conscience. For though it is to *a belief of a defence* that a defendant swears, yet in many cases it may be difficult to know what to believe; and he will always be disposed to deceive himself into *a belief*, for the sake of procuring a delay. This is a leading into temptation.

A distinction seems to be made in some of the rules, between swearing to *the belief*, and swearing *positively;* a distinction which has no foundation in common sense, or in common law. For when a man swears positively, all he means to say, is that he *positively believes it;* and on a prosecution for perjury, the only question can be, whether there is reason to suppose that he did believe it. The effect of this mode of expression, goes no farther than to the certainty or uncertainty of the persuasion of his own mind as to the truth of what he swears.

The appeal to the conscience in this way took its rise in the inadequacy of the judiciary establishment to reach the trial of a cause, by the common rules, in a reasonable time; and was a substitute to a certain extent, for what the legislature ought to have done, by the constitution of the courts, rendering it possible to reach the trial of causes in a reasonable time; and it might be advisable to leave it to this natural and proper remedy. The multiplication of oaths is an argument against laws that require them, and so it ought to be against rules in the administration of the laws. The frequency of oaths detracts from their solemnity. They become a matter of course. Customhouse oaths are proverbial. Under the Circuit Court law, and the rules introduced to supply the hardship of delaying a judgment, there was a great deal of this affidavit making; and it was a good reason amongst others why that court should be abolished.

Judgment affirmed.