Duke *vs.* Trippe.

No. 45.—ROBERT DUKE, administrator, &c. plaintiff in error, *vs.* WM. W. TRIPPE, defendant in error.

[1.] Writ of error dismissed—

1st. Because notice of the signing and certifying of the bill of exceptions was not filed in the Clerk's office of the Court below.

2d. Because the Clerk of the Court below did not certify and send up to the Supreme Court, a transcript of the record and the bill of exceptions, within the time prescribed by law and by the 31st Rule of the Court.

[2.] A construction given to the 6th section of the law organizing the Supreme Court.

Motion to dismiss the writ of error.

HALL for the motion.

McDONALD, contra.

*By the Court.*—NISBET, J. delivering the opinion.

The parties joined issue in this case, with a protestation on the part of the defendant in error, and he moved to dismiss the writ upon several grounds.

[1.] The writ was dismissed—

1. Because notice of the signing of the bill of exceptions was not filed in the Clerk's office of the Court below.

2. Because the Clerk of the Court below did not certify and send up to this Court, a transcript of the record and the bill of exceptions, within the time prescribed by law and by the 31st Rule of this Court.

Both of these questions have been before this Court more than once, and we had hoped were known to the bar as no longer open. Having been asked by the counsel for the plaintiff in error, to reconsider our previous ruling of them, upon argument had, we find no reason to vary from what has been the practice of this Court heretofore. That there may be no controversy about these points in the future, and from respect to the counsel for the plaintiff in error, we now record the reasons upon which these questions are settled. The Statute organizing the Supreme Court determines them. The language of the Act is too plain to

Duke *vs.* Trippe.

admit of two constructions. It is as follows : " When such bill of exceptions shall have been signed and certified by the Judge of the Superior Court, and such bond, with security, shall have been given, or recognizance with security entered into, and cost paid, notice of the signing of such bill of exceptions shall be given, if in a criminal cause, to the Attorney or Solicitor General, and in civil causes in Law or Equity, to the adverse party or his counsel, within ten days after the same shall have been done, and *shall be filed in the Clerk's office where such bond or recognizance has been given, immediately thereafter*, and a copy of such notice being served by a Sheriff, Constable or Attorney of the Superior Court, and filed in the Clerk's office, with the bill of exceptions, it shall be the duty of the Clerk of the Superior Court below, to certify and send up to the Supreme Court, a complete transcript of the entire record of the cause below, duly certified under his hand and seal of office, and also the bill of exceptions, *within ten days after he shall have received the original notice* with the return of service thereon." *Act of December*, 1845, *5th sect.* 1 *Kelly*, 7. An analysis of this clause will show the following results : It requires that *notice of the signing of the bill of exceptions* shall be given to the Attorney or Solicitor General in criminal causes, and in civil causes at Law or in Equity to the adverse party or his counsel, within ten days after the same shall have been done, that is, after the bill shall have been signed. It also requires *that such notice shall be filed in the Clerk's office below where the recognizance or bond has been given*. The Statute contemplates *written notice*, for none other could be filed in office. And by enacting that it shall be filed, it unquestionably meant that the *written notice* should constitute an original part or parcel of the record, and should be transmitted with the transcript to the Court above. Whether with reason or without reason, the notice is required to be filed. This is yet more manifest from the fact, that the Clerk is required to certify and send up the transcript and bill, within ten days after he shall have received the *original notice*, with the return of service thereon. The working of this part of the Act is not difficult of comprehension. The business of the plaintiff in error is, within ten days from the signing of his bill, to make out a notice to the adverse party, and to serve him with a copy, by his attorney, the Sheriff or Constable, and to enter such service, and its date, on the original, and hand it to the Clerk, to remain of file

in his office. When that is done, and not before, the Clerk becomes bound to transmit the record and bill within ten days. In relation to the service of the notice, we have held that an acknowledgement of service or waiver will be a compliance, because to be served is a personal privilege. But such waiver or acknowledgment has never been held to dispense with the filing of the notice. It is made, I repeat, by law, a part of the record, an indispensable part of the pleadings in the case. It might, indeed, be a serious question, whether to a process of *mandamus*, or to an action on his bond for default in the duties prescribed by this Act, it would not be a sufficient reply for the Clerk, that this notice was not filed. I express no opinion, however, on that point. The single point just now is, whether the filing of the notice is necessary. The law is so written, and we hold it obligatory upon us.

The other ground upon which this writ was dismissed is, that the Clerk did not certify and send up the record and the bill within the time prescribed by law. *The fifth section of the Act of 1845*, requires the Clerk to send up, duly certified under his hand and seal, the record and the bill of exceptions, " within ten days after he shall have received the original notice with the return of service thereon." The date of the Clerk's certificate, in this case, is not within the time. The mandate of the law is very explicit. It prescribes a specific duty. It defines the time within which he shall certify and send up the record and bill. After that time he cannot legally certify and send them up. The Clerk's certificate must show the time when the official transmission is made. His certificate is the official transmission. The manual tradition may be made at any time before the term. If his certificate is without date, or if it shows a date (as here) beyond the ten days, it is irregular. The Clerk has no discretion about it, nor have we. Declaratory of the Act, and in accordance with it, is the 31st Rule of this Court. In reply to these views, it is not contended but that the law is written as I have stated it to be, but it is insisted that this Court ought so to accommodate the law upon these points to its practice, as to prevent the dismissal of causes for clerical defaults—to put such a construction upon the law as will exclude no party from a hearing before it. The enormous injustice of turning a party away unheard from our door, has again and again been presented *as argument* to relax the law. We

Duke *vs.* Trippe.

shall listen to no such appeals. Our sympathies are not the rules of our judicial action. It is our duty and it is our pride to abide the law. If it is wrong, let the Legislature amend it. That is their prerogative—it belongs not to us. We repudiate judicial legislation. We shall endeavor, whilst we sit here, to avoid the errors into which the Judiciary in England and elsewhere has fallen, of engrafting upon important yet simple Statutes, a vast body of unwritten law, to the delay of justice, the multiplication of suits, and sometimes to the confounding of lawyers and Judges. Our organic law is simple, our rules of practice are few, and we shall try to keep them so. The requirements of the Act and of the rules are easy of compliance. A little attention to the details of our practice, will ensure a hearing before this Court; when it is denied, it is the fault of those whose duty it is to see to it that the law is complied with. We shall endeavor to do our duty, and we shall also endeavor to see to it that the law is complied with by all those who have duties to perform under it. The chief excellency of the Supreme Court organization, consists in its insuring certain and early hearings, and in the simplicity of its machinery. That the administration of justice here should be certain and speedy, and attended with little complexity in pleading, and small cost to parties, were objects anxiously desired and carefully provided for by the Legislature. It has been our good fortune thus far, to have obeyed the great mandate of the Constitution, to try every cause at the first term, unless it is continued for Providential cause. No class of men know, with a juster appreciation of its value, than do the learned members of the legal profession, the importance of the idea of *fixed general rules.* Rules to be useful must be general and they must be permanent. They cannot be relaxed to avoid hard cases. A fluctuating rule of law or of practice would injure ten, where a strict enforcement of a steadfast rule would injure one. When known to be invariable, all parties will conform, and when known to be fluctuating, many will take the chances of escape from the consequences of carelessness or neglect. The vigilant party is the losing party under laws or a practice which is unsteady. Rules have no prescription unless uniform. The citizen knows not how to regulate his conduct, nor the lawyer his pleadings or his counsel, unless the Courts will abstain from springing upon them new rules or new laws under the guise of construction.

Duke *vs.* Trippe.

[2.] It is also insisted, that errors in the pleadings, growing out of the acts of the Clerk, for example, the very defect protested against in this case, to wit: a failure to certify and send up the record and bill within time, are subject to correction under the 6th section of the Act. Let us examine it for a moment. It provides, that if any Judge of the Superior Court shall refuse to certify a bill of exceptions, when properly tendered, *or if any Clerk shall fail or refuse to send up a transcript of the whole record in any cause, according to the provisions of this Act,* or he or any Sheriff shall refuse or neglect to perform any duties imposed upon him by this Act, the Supreme Court, while in session in any district in this State, may issue a writ of mandamus to such officer, and enforce obedience thereto by attachment; and in all such cases the party applying for such writ shall not lose his remedy, but may proceed as if the time limited in the Act had not expired. 1 *Kelly,* 8. It was obviously necessary that this Court should be clothed with power to compel the Judges of the Circuit Courts, and the Clerks and Sheriffs, to do what the law requires them to do. Accordingly, the Legislature has made them amenable to it by mandamus and attachment. But in what cases are they so amenable? Only when they refuse, or for any cause fail to act. If they act at all, however erroneously, they are not, according to our construction of the sixth section, liable to the process of mandamus. The law contemplates contumacy, resistance to the law and the authority of this Court. And if, in point of fact, there is no contumacy, yet where there is no action, we will presume contumacy. If, for example, from absolute physical inability to transcribe and send up the record, growing out of the amount and pressure of business, (a case that has occurred,) the record is not sent up and no attempt made to send it up, we will grant a mandamus. The law does not recognize any such inability—the law declares his duty, and *he must do it.* He must do his duty— he must send up the entire record, *according to the provisions of this Act.* The latter clause, it is said, is a key to this whole section, and it is insisted, that if he does send up a record, but sends up an imperfect one, or sends it up after the time limited, he does not do his duty according to the provisions of the Act, and that in such case the plaintiff in error shall not lose his remedy; but that the case may be delayed until, by writ of mandamus, the defective return may be corrected. So far as an imperfect record

Duke *vs.* Trippe.

is concerned, our rules provide for its correction by certiorari. 18*th Rule of Court.* It is true, that the Clerk is required to send up the record according to the provisions of the Act; still he is liable to mandamus only when he is contumacious in relation to any duty required *by the provisions of the Act.* This provision does not relate to the manner of doing his duty, but extends his liability to all duties devolved upon him by the Act. To be more definite, he is required, by the provisions of the Act, to send up the entire record, under his hand and seal, with the bill of exceptions, and he is required to do this within a limited time; now, if in relation to any one of these requirements, he is contumacious, he is liable to the writ of mandamus. This is unquestionably the meaning of this section, and this meaning is manifest from several considerations. If there is imperfection in the manner of sending up the record, when it is attempted, this Court cannot infer contumacy or resistance to the law, and such imperfections, derelictions or omissions, must be put upon the footing of errors in the pleadings. Now, suppose that it were true, that the Legislature had directed that these things might be amended by the writ of mandamus, what a curious thing would not that be in the science of jurisprudence! It would be something new under the sun—something grotesquely unique. The ten thousand errors to which pleadings are heir, corrected by mandamus! Throughout all the range of jurisprudence, pleadings are as much subject to law as rights. Remedies, the manner of asserting rights, are subject to rule, or to law. It is a thing universally conceded, that parties must seek these remedies according to law—the regularity of the pleadings is to be tested by general rules—by them they stand or fall, and if a record comes to us illegally certified, the case falls *by the mandate of the law.* Is there any novelty, any thing strange, in this? All over the civilized world, parties are turned out of Court because of errors of this kind. The requirements of the law, as to the manner of bringing cases into this, into all, Courts, protect the rights of both parties. But again, if this construction be allowed—if all such defects are amendable by mandamus—the result would be interminable delays and remediless confusion. There might be a defect in every case—many defects in each case. A writ in each instance of irregularity, a return, an issue, a judgment, and then, perhaps, an attachment to enforce it. This Court would stagger and fall and

Duke *vs.* Trippe.

sink under such pressure. It would incur, and it would deserve, a forfeiture of public confidence. But the most conclusive argument against this construction, is this : such a construction would make the law repugnant to the Constitution. Such a construction could not be enforced without delaying the trial of causes beyond the first term. Such defects as I am considering, cannot be brought regularly to the knowledge of this Court until the term to which the case is returnable; and in the nature of the case, a mandamus could not then issue and be determined without delaying the case at least one term. Now, the Constitution requires the Supreme Court, "at each session in each district, to dispose of and finally determine each and every case on the docket of such Court, at the first term after such writ of error brought; and in case the plaintiff in error in any such case, shall not be prepared at such first term of such Court after error brought, to prosecute the same, unless precluded by some Providential cause from such prosecution, it shall be stricken from the docket, and the judgment below shall stand affirmed." *Prince,* 909. Our construction of the 6th section is in conformity with the Constitution, and both the law and the Constitution may stand under it; the other construction is in conflict with it, and if it were the true one, we should be compelled to force the law to yield to the Constitution. Nor is a dismissed party remediless, for the officers and their sureties are liable to them.

To carry into effect the 6th section of the Act, as we understand it, our 32d Rule was adopted. This rule neither enlarges nor restricts the 6th section of the law. It prescribes the *manner* in which the privileges of that section may be enjoyed. It makes no new law—it repeals no existing law. That rule, and all our rules, are the law of this Court, as all rules adopted by Courts of Justice are, when not in conflict with, and which add nothing to, the laws of the land. Parties are bound by them. It is incident to every Court of record, to adopt rules of practice which do not contravene the laws of the land. 1 *Peters,* 604. 3 *Binn.* 277. 4 *Yeates,* 361. 3 *S. & R.* 253. 3 *Binn.* 417. 8 *S. & R.* 336. 2 *Mis.* 98. However, our organic law expressly empowers this Court to establish rules of practice. 1 *Kelly,* 10.

Let the writ be dismissed.