*Philadelphia.*

JORDAN *against* COOPER and another.

*Saturday,*
*January 3.*

·IN ERROR.

The plaintiff is a competent witness, to prove notice to the defendant to produce a deed.

The plaintiff declared in covenant, on articles of agreement, by which he was to deliver a deed to the defendant, on the 27th May, 1812, and the defendant was to pay part of the purchase money on that day, and the residue on the 1st May, 1813, and the plaintiff averred, that he did deliver a deed to the defendant,

THIS was a writ of error to the Common Pleas of *Lehigh* county.

*John Cooper* and *Peter Cooper*, the plaintiffs below, brought this action of covenant against *Frederick Jordan*, and declared, " that by certain articles of agreement, made and executed at *Lehigh* county, aforesaid, the 11th day of *March*, 1812, between the aforesaid *John Cooper* and *Peter Cooper*, by the names of *John* and *Peter Cooper*, both of upper *Saucon* township, in the county of *Northampton*, and state of *Pennsylvania*, of the one part, and the said *Frederick Jordan*, by the name of *Frederick Jordan*, of the same place, of the other part, (which said articles of agreement, the said *John Cooper*, and the said *Peter Cooper*, with the seals of them, the said *John* and *Peter Cooper*, and of him, the said *Frederick Jordan*, respectively sealed, here into Court bring, the date whereof is the same day and year,) it was concluded and agreed, by and between the said parties, and

on the 27th May, 1812, which was then and there accepted by the defendant, but the defendant had not paid the money, due on the 1st May, 1813; *held*, that the time of making the deed was material, and that the plaintiff could not give in evidence, that he delivered a deed, dated 3d May, 1813, which was accepted by the defendant.

When the time of doing a thing is immaterial, evidence of doing it on a different day is admissible; otherwise when it is material.

Where on articles of agreement, for purchase of land, the execution of the deed is postponed beyond the time originally stipulated by the consent of the purchaser, in case of a breach on his part, in not paying the purchase money, a declaration should be framed, suited to the circumstances of the case.

If a covenant be alleged in the narr. to be made by the defendant, his heirs, executors, and administrators, but the covenant does not mention heirs, the variance is not material, where the action is against the party covenanting.

When the prothonotary, by rule of Court, is authorised to join issue, it is not error, that there is no rejoinder to a replication of fraud.

the said *John Cooper* and *Peter Cooper*, by the said articles
of agreement, did, for the consideration in the said articles
of agreement mentioned, grant, bargain, sell, enfeoff, release,
and confirm, unto the said *Frederick Jordan*, his heirs, and
assigns, three several pieces of land, in the same articles of
agreement mentioned, and described, as follows, to wit, the
one thereof, situate in the said township of *Saucon*, in the
county of *Lehigh*, aforesaid, adjoining land of *Philip Seller*,
*Jacob Hartzell*, and land now of *Jacob Berger* and *Jacob
Arnold*, containing forty-six acres, and one hundred and
thirty perches; one other tract, situate in the township afore-
said, adjoining land of *Christian Rinker*, *Masteller Philip
Seller*, and *Jacob Arnold*, containing seventeen acres, and
some perches of land ; and a part of one other tract, situate
in the township of *Springfield*, in the county of *Bucks*, ad-
joining land of *Jacob Hartzell, John Yoder, Abraham Yoder*,
and *Joseph Frey*, containing sixteen acres, or more, out of
which said last mentioned sixteen acres, the said *Frederick
Jordan*, was, by the said articles of agreement, to be allowed
to take from one end thereof, at his pleasure, ten acres ;
and the said *Frederick Jordan*, for himself, his heirs, execu-
tors, and administrators, did covenant and agree, to and
with the said *John Cooper* and the said *Peter Cooper*, by
the same articles of agreement, that he, the said *Frederick
Jordan*, would pay unto the said *John Cooper* and *Peter
Cooper*, the sum of twenty-one pounds, good and lawful
money, for each and every acre thereof, in manner following,
that is to say, the *sum of one thousand dollars, on the twenty-
seventh day of May, next ensuing the date of the said articles
of agreement, and the remainder thereof on the first day of
May, in the year of our Lord* 1813. And it was further
agreed by the said parties, in and by the same articles of
agreement, that upon the said *Frederick Jordan* paying to
the said *John Cooper* and *Peter Cooper*, aforesaid, the said
first payment of one thousand dollars, they, the said *John*
and *Peter Cooper*, would give to the said *Frederick Jordan*,
a good and lawful deed, or deeds of conveyance, for the
three several pieces of land ; and moreover, should and
would deliver and give possession thereof, unto the said
*Frederick Jordan*, on the 15th day *April*, next ensuing, the
date of the said articles of agreement," &c. " And the said
*John Cooper* and *Peter Cooper*, in fact, say, that although

they, the said *John* and *Peter*, from the time of making the same articles of agreement, hitherto, have well and faithfully performed and kept, all and singular the covenants and agreements, in the said articles of agreement contained, which on their parts were to be done and performed; and that they, the said *John* and *Peter Cooper*, aforesaid, did, *on the twenty-seventh day of May, A. D.* 1812, after the making of the said articles of agreement, make, and seal, and give, and deliver unto the 'said *Frederick Jordan*, a good and lawful deed of conveyance, for the three tracts or pieces of land, in the same articles of agreement mentioned, to and for the proper use and behoof of the said *Frederick Jordan*, his heirs, and assigns, according to the terms of the said articles of agreement, which said deed of conveyance, he, the said *Frederick Jordan, on the day and year last aforesaid, at the county of Lehigh, aforesaid, did accept.* And the said *John* and *Peter Cooper*, further say, that they the said *John* and *Peter Cooper*, on the said fifteenth day of *April*, in the year last aforesaid, did give and deliver possession of the said three tracts of land, in the same articles of agreement mentioned, unto the said *Frederick Jordan*, according to the terms of the same articles of agreement; and although the said *Frederick Jordan*, did on the twenty-seventh day of *May*, 1812, pay unto the said *John* and *Peter Cooper*, the sum of one thousand dollars, part of the said consideration money, for the said three tracts of land, in the same articles of agreement mentioned, according to the terms of the same articles, yet the said *Frederick Jordan*, did not pay unto the said *John* and *Peter Cooper*, the residue or remainder of the said consideration money, at the rate of twenty-one pounds for each and every acre, in the said three pieces or tracts of land, in the same articles of agreement mentioned, contained, or any part thereof, *on the said first day of May*, 1813, which to them, on the said last mentioned day and year, he ought to have paid, according to the force, form, and effect of the same articles of agreement. And so the said *John* and *Peter Cooper* say, that the aforesaid *Frederick Jordan*, although often required, his covenant aforesaid hath not kept, but broken," &c.

To which declaration the defendant pleaded.

1. "That the said *John Cooper* and *Peter Cooper* ought not to have or maintain their aforesaid action thereof against

him, because, he says, that the said *John Cooper* and *Peter*
*Cooper* did not, on the twenty-seventh day of *May*, in the
year 1812, after the making the said articles of agreement,
make and seal, and give and deliver, unto the said *Frederick*
*Jordan*, a good and lawful deed of conveyance for the three
tracts or pieces of land, in the same articles of agreement
mentioned, to and for the proper use and behoof of the said
*Frederick Jordan*, his heirs and assigns, according to the
terms of the said articles of agreement, in manner and form
as the said *John Cooper* and *Peter Cooper* have above, in
their said declaration, in that behalf, alleged. And of this
he puts himself upon the country, &c."

2. " That after the said first day of *May*, 1813, in the said
articles of agreement mentioned, and before the commence-
ment of this suit, to wit, on the third day of *May*, 1813, at the
county aforesaid, he, the said *Frederick Jordan* paid to the
said *John Cooper* and *Peter Cooper*, the residue or remain-
der mentioned in the supposed breach of covenant above, by
the said *John Cooper* and *Peter Cooper*, in their said decla-
ration, in that behalf alleged, and assigned, of the conside-
ration money, at the rate of twenty-one pounds for each and
every acre of the said three several tracts of lands, in the said
articles mentioned. And of this he puts himself upon the
country, &c."

3. " That the said *Frederick Jordan*, after the said first
day of *May*, 1813, in the said articles of agreement mention-
ed, and before the commencement of this suit, to wit, on the
third day of *May*, in the year last aforesaid, at the county
aforesaid, paid to the said *John* and *Peter Cooper* 1175*l.* 3*s.*
10½*d.* of lawful money of *Pennsylvania*, in full satisfaction and
discharge of the residue, or remainder of the consideration
money, mentioned in the supposed breach of covenant above,
by the said *John Cooper* and *Peter Cooper* in their said de-
claration, in that behalf alleged and assigned, and of all the
damages by the said *John* and *Peter Cooper* sustained, by
reason of the non-payment thereof ; which said sum of 1175*l.*
3*s.* 10½*d.* of lawful money aforesaid, the said *John* and *Peter*
*Cooper* then and there accepted, and received, of and from
the said *Frederick Jordan*, in full satisfaction and discharge
of the said residue and remainder of the consideration mo-
ney, in the said supposed breach of covenant mentioned, and
of the damages of the said *John* and *Peter Cooper* by them

sustained, by reason of the said supposed breach of covenant. And this he, the said *Frederick Jordan*, is ready to verify. Wherefore, &c."

4. " That after the 1st *May*, 1813, in the said articles of agreement mentioned, and before the commencement of this suit, to wit, on the 3d *May*, in the year aforesaid, at the county aforesaid, he, the said *John Cooper*, by indenture in writing, made between the said *John Cooper* and *Elizabeth* his wife, of the one part, and the said *Frederick Jordan* of the other part, sealed with the seals of the said *John Cooper* and *Elizabeth* his wife, and to the Court here shewn, the date whereof is the same day and year last aforesaid, did acknowledge to have received of and from the said *Frederick Jordan*, at and before the sealing and delivering of the said deed, the sum of 1550*l*. 3*s*. 10½*d*. of lawful money of *Pennsylvania*, as and for the full and whole consideration money, for the said three several tracts or pieces of land, in the said articles of agreement mentioned, and thereof did release, acquit, and for ever discharge the said *Frederick Jordan*, by the said indenture. And this he, the said *Frederick Jordan*, is ready to verify. Wherefore, &c."

The plaintiffs replied generally to the aforesaid pleas, and issue was joined on the three first pleas. To the fourth plea the plaintiffs replied, no release; and that said release was obtained by fraud.

Upon the trial of the cause, the plaintiffs offered *Peter Cooper*, one of the plaintiffs, to prove the service of a notice upon the defendant, to produce a deed, dated 14th *November*, 1812, from *Daniel Cooper* and wife, to *John Cooper*, and also, a deed dated the 3d day of *May*, 1813, from *John Cooper* and wife, to the defendant. The defendant objected to the competency of the witness, to prove the service of the notice. The witness was admitted, and the defendant excepted to the opinion of the Court.

The plaintiff's counsel then offered in evidence the notice, proved by the said *Peter Cooper* to have been served upon the defendant, three or four weeks before the trial of the cause. To this the defendant objected, but the objection was overruled, and the defendant excepted to the opinion of the Court, who decided that, upon this proof, the plaintiff might go into parol evidence of the contents of the said deeds. Whereupon the counsel for the defendant produced the said

deeds, and delivered them to the plaintiff's counsel, who
called for them.

The plaintiff's counsel then offered in evidence the said
deed from *John Cooper* and wife, to *Frederick Jordan*, exe-
cuted, and bearing date, the 3d day of *May*, 1813. To which
evidence the defendant objected, and the objection being
overruled, excepted to the opinion of the Court.

The plaintiffs then offered *Leonard Nagle*, to prove that the
defendant had the deed from *J. Cooper* and wife to him in his
possession, on the 3d *May*, 1813, and on that day brought it to
the recorder's office, to be recorded. They also offered *John
Shuler* and *Andrew Windt*, to prove that no money was paid
at the execution of the deed, and that the defendant con-
fessed he had not paid all that was due, though he had
a receipt and acknowledgment, before a Judge, for the
money. To this evidence the defendant objected, but it was
admitted by the Court, and another bill of exceptions taken.

The defendant's counsel stated the following points of
law, upon which they requested the Court to charge the jury.

1. Does the proof of the execution, delivery, and accept-
ance of the deed, bearing date the 3d of *May*, 1813, support
the plaintiff's case on the first issue?

2. Does not the execution, delivery, and acceptance of the
deed, bearing date the 3d of *May*, 1813, annul and supersede
the written articles of agreement, so as to take from the plain-
tiff his action of covenant upon those articles.

3. Does not the release, in the body of the deed, dated
*May* 3d, 1813, and the receipt at the foot thereof, operate as
a conclusive bar to any recovery by the plaintiff, in an action
of covenant on the articles of agreement?

4. Do the articles of agreement, given in evidence, in this
cause, (*prout* the articles) support the declaration of the
plaintiffs in this cause?

5. Have not the plaintiffs mistaken their form of action?

Whereupon the Court delivered the following charge to
the jury.

"In *England*, from which country our system of jurispru-
dence is derived, and in some of the states of the Union,
there are Courts of Law and Courts of Chancery, possessing
separate and distinct jurisdictions. The Courts of Law are
governed in their decisions by the strict rules of law. The
Courts of Chancery mitigate those rules according to equity

principles. The citizens of *Pennsylvania* have been opposed to the establishment of Chancery jurisdiction distinct from the Courts of Law, and have required that in the administration of justice, the strict rules of law should be blended with and mitigated by equity principles. In *Pennsylvania,* Courts of Law have, to a certain extent, equity powers.

" I will not trouble you with dwelling on the niceties of special pleading. The Court has properly admitted all the evidence. I believe the evidence, in general, has been admitted according to the rules of pleading. Some parts of it were admitted by consent.

" It appears that by certain articles of agreement between the parties in this cause, bearing date the 11th *March,* 1812, *John* and *Peter Cooper* engaged to convey three several tracts of land mentioned in the same articles; that *Frederick Jordan* agreed to pay for the said tracts, at the rate of 21*l.* per acre. That *Frederick Jordan* agreed to make the first payment of 1000 dollars, on the 27th *May,* 1812. That the plaintiffs *John* and *Peter Cooper,* were to make a good and lawful conveyance of the three tracts on the said 27th *May,* 1812, and that *Frederick Jordan* was to pay the remainder of the consideration money on the 1st *May,* 1813. On the 27th *May,* 1812, *Frederick Jordan* paid the 1000 dollars, and *John Cooper* made, executed, and delivered a deed for the three tracts of land, on the 3d *May,* 1813. It also appears that *Jordan,* on the 15th *April,* 1812, took possession of the three tracts and remained in possession.

" It has been said that this deed annuls and makes void the articles of agreement. If the agreement between the parties was fully performed, the deed would have this effect; but if not fully performed, then the deed will not have this operation. The acknowledgment in the body of the deed, and the receipt at the foot of it, are not conclusive evidence of payment, so as to deprive the plaintiff of his action on the articles of agreement. The plaintiffs may shew that all the money has not been paid. If the plaintiffs allege that this deed was obtained fraudulently, proof may be made that all the consideration money has not been paid.

" It has also been said that the deed must be proved to have been made on the 27th *May,* 1812. The time of making the deed may be waved. You must judge from the · evidence, whether there has been such a waver. I do not discover any

defect in the pleadings, nor in the allegation, that this deed was made on the 27th *May*, 1812. If the plaintiff had varied from the articles of agreement, in this respect, he would have mispleaded.

" It is said that, in this case, the action of covenant will not lie. I think the plaintiffs have adopted the proper form of action."

To which charge the defendant excepted, and tendered a bill of exceptions.

*Scott*, for the plaintiff in error.

1. One of the plaintiffs was admitted as a witness, to prove the service of a notice on the defendant, to produce certain deeds. The practice of *Pennsylvania* has been more liberal than the English rules, in admitting the parties to prove collateral facts, but even our Courts have not gone so far as the present case; which admits the plaintiff to prove a matter, that goes to the decision of the cause. In *Douglas's lessee* v. *Sanderson*,(a) the plaintiff was held to be a good witness, to prove the death of a subscribing witness to a deed, in order to let in evidence of the hand-writing; but that proof was not decisive of the case. If a plaintiff is a good witness to prove notice, why is he not also competent to prove any conversation between him and the party? There is no necessity for admitting such evidence.

2. The deed from *John Cooper* and wife to *Frederick Jordan*, dated 3d *May*, 1813, was improperly allowed to be read in evidence. The declaration averred, that the plaintiff on the 27th *May*, 1812, made and delivered a deed to the defendant. This is expressly denied by the plea, and issue was joined upon it. Yet the Court received this deed in evidence, and charged the jury, that the evidence supported the issue. The question is not, whether the acceptance of a subsequent deed, would not in equity, have been sufficient. That question might, perhaps, have been brought before the Court; but a different one is presented on these pleadings. The plaintiffs after declaring upon one deed, would not be allowed by way of replication, to set up a new deed and new circumstances. In pleading, it would be a departure to do so. *Co. Lit.* 304. *a.* Much less will they be permitted to give evidence of an agreement, totally variant from the one

(a) 2 *Dall.* 116.

1818.

JORDAN
v.
COOPER
and another.

set out in the pleadings. 11 *Johns.* 527. 2 *Selw. N. P.* 463. 2 *Selw. N. P.* 440. *Falkner* v. *Eddy.*(a) 2 *Doug.* 690. 20 *Vin.* 276. *pl.* 8. *pl.* 12. *Phillips* v. *Rose.*(b)

3. The articles produced, vary from the one declared on in this, that the declaration states, that the defendant bound himself, his heirs, executors, and administrators; whereas the articles make no mention of heirs.

4. There was no rejoinder to the replication of fraud; nor issue thereon. Besides, the replication is double; and ought to be entirely rejected.

5. The evidence of *Shuler* and *Windt* went to prove fraud; a matter not in issue.

*Ewing* and *Rawle*, contra.

The plaintiff below, had an award of arbitrators, and a verdict in his favour, and ought not now to be baffled on mere technical points.

1. The constant practice in *Pennsylvania*, has been to prove all kinds of notices by the party. Such as notice to take depositions, to produce deeds, papers, &c. and it has been recognised over and over again by the Courts.

2. As to the deed given in evidence, the date was not a matter material on this issue. A deed with a false date or no date is good, if sealed and delivered, and takes effect from the delivery. 4 *Com. Dig.* 160. *Fait. b.* 3. The party is estopped from saying the deed was delivered before its date; but the jury are not, and may find the truth. Though the declaration alleges a delivery of the deed, on the 27th *May*, 1812, yet it avers an acceptance of the same, according to the articles of agreement; which is a dispensation by the defendant of the day fixed upon, and a waver of it. The substance of the allegation of the plaintiffs in the declaration, is the delivery and acceptance of the deed; and the parties may vary the time of performance of the agreement at their pleasure. The defendant does not deny the acceptance of the deed. The day of delivery is equally immaterial with the date of the deed, provided it appears that it was accepted. Of the evidence given, the defendant had substantially notice in the declaration. His plea makes a day material which was not so; and the plaintiffs might have demur-

(a) 1 *Binn.* 190.                    (b) 8 *Johns.* 392.

red. In equity, there would be no doubt of our title to recover; and the forms of law should, in this state particularly, be permitted to be used to suit the circumstances of the case, as they may appear in evidence. If they are not, the party is remediless; for at law, the plaintiff would not be allowed to state in his narr. a delivery on a day different from that stipulated. They cited 2 *Saund.* 207. 317. 319. 1 *Str.* 554. *Cro. Car.* 78. *Pow. on Cont.* 268. *Sugd.* 244. *Newland on Cont.* 231. 236. *Salk.* 912. 5 *Co.* 43. *a.* 1 *Bac. Ab.* 109. *Agreement B.* 2 *P. Wms.* 629. 1 *Atk.* 629. 1 *Binn.* 225-6. 2 *Johns.* 614. 1 *Bac. Ab.* 643. 1 *Johns. Cas.* 22. 70, 71. 3 *Johns.* 528: 1 *Chitty on Pl.* 622.

1818.

JORDAN
*v.*
COOPER
and another.

3. It is not necessary to dwell on this point. The heir is not sued. Besides, the whole estate is assets.

4. It is said no issue is joined. But by the rules of the Court of Common Pleas of *Lehigh* county, upon plea being entered, the prothonotary is directed to put the cause at issue, and enter the proper replication or other pleadings, for that purpose, provided no injury is thereby done to the parties. So that this is a mere clerical omission. By going to trial, the defendant considered issue as joined. Besides, the objection is now made by the party who failed to rejoin, and after verdict; when the Court will amend, or consider as amended, what ought to be. The replication *by fraud*, is surplusage, and may be rejected. 10 *Johns.* 53. 461. 2 *Johns.* 387. 5 *Bac. Ab.* 365-8. 1 *Chitty* 571. 2 *Binn.* 1793. 12 *Johns.* 353. *B. N. P.* 168. *Peake's Ev.* 264. *Phill. Ev.* 428. 5 *Co.* 119.

5. The evidence of *Shuler* and *Windt* did not go to prove fraud, but that the money was not paid.

*Binney*, in reply, declined arguing the first point, admitting it to be the practice in *Pennsylvania.* He confined himself principally to two points. 1. The not joining issue on the replication of fraud. 2. Admitting the deed in evidence.

1. There is no rule of law, that if issue has not been joined, the matter is helped, because the defendant was first in fault. But it is said, the prothonotary ought to have put the cause at issue. To this we answer, that it was the plaintiff's business to see that it was done. Besides, the act of the prothonotary was not to injure the party. If no issue

is joined, no statute cures the defect. Judgments have in such cases been reversed in this Court, *Brown* v. *Barnet*.(a) No release, and by fraud, are to be considered as one replication. If they are two, which shall be taken? It is best to reject both replications as double, and then the plea of release remains unanswered. Besides, the evidence shews, that it was taken for granted, they were at issue on the plea of fraud; and the charge of the Court was on fraud. The plaintiff's deed of conveyance contains a release in law, which may be avoided in equity, by proving that the money was not paid; but in order that the plaintiff may be admitted to this proof, he should give notice of it by pleading. If no issue was joined in fraud, no evidence of it should have been admitted.

2. The rules of pleading in *Pennsylvania*, are not broken down by the introduction of equity principles. The equity must be shewn by pleading or by notice under a rule of Court. The mischief would be great if a contrary doctrine prevailed. The day on which a promise was made is not material; the day on which it was to be performed is material. The case cited of *Phillips* v. *Rose*, proves that the time of performance is material. The equity cases shew, that at law, the time of performance is material. As to the plea not denying the acceptance of the deed, that was unnecessary when it denied the delivery.

TILGHMAN C. J. This is an action of covenant, brought by *John* and *Peter Cooper*, (the plaintiffs below,) against *Frederick Jordan*, (plaintiff in error.) The declaration sets forth articles of agreement between the parties, dated 1st *March*, 1812, by which the plaintiffs agreed to sell to the defendant three parcels of land, for which the defendant was to pay at the rate of 21*l.* lawful money of *Pennsylvania*, an acre, *viz.* 1000 dollars on the 27th *May*, 1812, and the residue on the 1st *May*, 1813. Possession was to be delivered to the defendant on the 15th *April*, 1812, and on the first payment of 1000 dollars being made, the plaintiffs were to execute a deed of conveyance. The declaration then goes on to aver, that the plaintiffs delivered possession to the defendant on the 15th *April*, 1812, and executed a deed of con-

*(a)* 2 *Binn.* 33.

veyance which the defendant accepted, 27th *May*, 1812, and did all other things which by the articles of agreement they were bound to do, but that the defendant, although he made the first payment of 1000 dollars, 27th *May*, 1812, failed in paying the residue on the 1st *May*, 1813. To this declaration the defendant put in four pleas. 1. That the plaintiffs did not execute a conveyance on the 27th *May*, 1812; on which issue was joined. 2. That the defendant paid the residue on the 3d *May*, 1813, and on this also issue was joined. 3. That the defendant paid 1175*l*. 3*s*. 10½*d*. lawful money aforesaid, which the plaintiffs accepted in full satisfaction of the said residue, and this he is ready to verify, &c. The plaintiffs made a general replication to this plea, and issue was joined on it. 4. A release by *John Cooper*, one of the plaintiffs, under his hand and seal, to the defendant, 3d *May*, 1813. To this the plaintiff replied, by a short entry on the docket, " *no release,* and *that the said release was obtain-* " *ed by fraud.*"

On the trial of the cause, the plaintiffs offered to prove by *Peter Cooper*, (one of the plaintiffs,) that notice had been given to the defendant to produce a certain deed. To this the defendant objected, but the Court admitted the evidence, and that is the first error assigned. Whatever might be my own opinion of this evidence, if it were a new question, I hold myself bound by the principle established by my predecessors, and frequently acted upon. In a collateral matter of this kind, the practice has been, to admit the evidence of a party to the suit. It was so decided in the *Lessee of Douglas* v. *Sanderson*, 1 *Yeates*, 15, and in *Levan's lessee* v. *Hart*, and *Means & Litle's lessee* v. *Flora*, (cited 1 *Yeates*, 16.)

2. The second error assigned is, in the admission of a deed (offered in evidence by the plaintiff,) from *John Cooper* and wife, to the defendant, executed and bearing date, 3d *May*, 1813, accompanied with parol evidence, that the deed was delivered to the defendant, and accepted by him, and record-ed at his instance. This evidence was objected to by the defendant, on the ground of its being a different deed from that set forth in the declaration, and on which the parties were at issue. In answer to this objection, it was argued on the part of the plaintiff, that, although the original agreement was, that a deed of conveyance should be executed on the first payment of 1000 dollars being made, and although that pay-

*Margin:* 1818.

JORDAN
*v.*
COOPER
and another.

1818.

JORDAN
*v.*
COOPER
and another.

ment was made, 27th *May*, 1812, yet the defendant consent-- ed, that the time of executing the plaintiffs' deed, should be prolonged, and actually accepted a deed made subsequently. So that *now*, it is immaterial at what time the deed was executed. The plaintiffs deny, indeed, that the time of executing the deed ever was material, but insist, that at all events it is now immaterial, because the defendant accepted the deed which was offered to him. That the time of making the conveyance was a substantial, material part of the agreement, cannot be doubted. It was to be executed on the first payment being made, which was on the 27th *May*, 1812. So. that the defendant was to have a complete title, nearly a twelvemonth before he was to make his last payment, *viz.* 1st *May*, 1813. The title might have been of great importance to the defendant. It might have enabled him to make sale of the land, or mortgage it, prior to the time of making his last payment; and this sale, or mortgage, would have afforded means to make that payment. It surely will not be insisted, that the defendant was to make his last payment before he received his title. And yet, the time for making the last payment, had arrived before this deed was executed; nay, the breach assigned in the declaration is, *that the defendant did not pay the residue of the debt on the* 1st *May*, 1813, at which time he had received no deed. The truth of the matter is, then, that the time was material, but the defendant consented to dispense with it, and the plaintiffs, on their part, consented to prolong the time for making the last payment; that is to say, the original agreement was altered. But how can the plaintiff be permitted to give evidence of an alteration in the agreement, when he has declared upon it, as it originally stood. I confess, I do not see, how such evidence can be received, without a prostration of all legal principles. Where the time of doing a thing is *immaterial*, evidence of a different time is admissible. In an action on the case, if I declare that the contract was made on a certain day, evidence may be given of a different day, because, if the contract was made at any time before the commence- ment of the action, it matters not when. But where the time is material, it must be proved, as laid. · So strict is the common law, that on a bond conditioned for payment of money on a day certain, a plea of payment *after* the day, could not be received. And it was not until a statute gave remedy,

that such pleas were permitted. It is true, that equity would always have relieved in such case. And it is certain, that in the present case, the plaintiffs are not without remedy. But then, the remedy, whatever it may be, must be pursued in such manner as to give notice to the defendant, that the plaintiffs intend to prove an alteration of the original agreement. That the plaintiffs cannot recover on their present declaration, was decided in *Phillips &c. v. Rose*, 8 *Johns*. 392, a case not to be distinguished, in principle, from this. There, the plaintiff was under articles to erect the frame of a mill, by a certain day, and he declared, that he did erect it according to the agreement. But on the trial, he offered evidence, and the Judge at *Nisi Prius* received it, that the defendant had assented to the execution of the frame at a *subsequent time*. But the Court in Bank ordered a judgment of nonsuit to be entered, because the evidence was illegal. " The contract, says the Court, must be proved as it was laid, otherwise the defendant has no notice of what he is called upon to answer. Evidence, that the contract was enlarged by *parol agreement*, will not support the declaration." This evidence, therefore, ought not to have been received.

*3.* The third error assigned, is, that the articles of agreement given in evidence, did not support the declaration, which states that the defendant bound himself, *his heirs*, executors and administrators; whereas, the *heirs* are not mentioned in the articles. This variance is not material, because by the law of *Pennsylvania*, the whole real estate is assets, whatever may be the nature of the debt. Besides, this action is against the man who made the contract, and not against his heirs.

*4.* The fourth error, is, that no issue was joined on the plea of fraud; and the 5th, that the evidence of *Shuler* and *Windt* ought not to have been admitted, because it tended to prove a fraud.

When the parties have considered the issue as joined, and gone on to trial on that presumption, it is with great reluctance that this Court hearkens to the objection of no issue being joined. In the present instance, I think the defect may be remedied, by the rule of the county Court, which directs the prothonotary to join the issue as a matter of course, when the plea is put in, without prejudice to the parties, who, if they please, may join the issue in a different manner.

VOL. III.—4 D

1818.

JORDAN
*v.*
COOPER
and another.

1818.

JORDAN
v.
COOPER
and another.

When the plaintiff replied *fraud* in this case, and the defendant made no rejoinder, but went on to trial, the omission to join the issue, may be considered, without straining the rule too far, as a clerical error, which this Court may amend.

It remains to be considered, whether an action of covenant can be supported on the evidence given in this cause, for upon that point, the defendant's counsel asked the opinion of the Court below. That it cannot be supported on the declaration as it now stands, I am very clear. But could it be, if the plaintiffs were permitted to amend the declaration, and should set forth the alterations of the agreement which took place? It is an important question, which may frequently occur; for it often happens, that agreements are not performed as originally intended, some alteration having been made by consent of both parties, and that too by parol. That a man should be altogether without remedy, when he has conveyed his land, when the purchaser had agreed to pay a certain price, and when the execution of the deed of conveyance was postponed with the consent of the purchaser, would be a reflection on the administration of justice. There could not be a more palpable fraud, than the acceptance of a deed by the purchaser, with an intent to evade payment, under the plea of the vendor's not having strictly complied with his covenant. There can be no doubt but equity would compel payment: but we have no Court of Equity. What then is to be done? We may do as has been done in other cases, where the forms of the common law were inadequate to the occasion; we may frame a declaration suited to the circumstances of the case. In the first place, set forth the covenants, according to the articles of agreement, and then shew the alterations which had been made by the consent of the parties. That equity is part of the law of *Pennsylvania*, has never been doubted; and that the defendant may put in a plea, founded *upon equity only*, is equally clear. This was decided, in the case of *Pollard* v. *Shaffer*, (1 *Dall.* 110,) in which the opinion of the Court was delivered in a very powerful argument, by Ch. J. M'KEAN. If the defendant, then, may plead, on principles of equity, why should not the same indulgence be extended to the plaintiff? We have never suffered ourselves, indeed, to depart, altogether, from the forms of law; for, I believe, it has not been supposed, that our Courts could take cogni-

sance of a bill for the specific execution of an agreement. But when the object is to recover debt, or damages, there is no reason why the usual form should not be somewhat relaxed, in order to reach the equity of the case. The propriety of so doing, has been long ago perceived, and we are not without precedent to guide us. At law, it was necessary to make profert, in an action of debt, on a bond, and, consequently, in *Pennsylvania*, a man who had lost his bond, must have lost his debt, if the rule had been strictly adhered to. To obviate this difficulty, the Court permitted the plaintiff to declare, according to the truth, that the bond was lost, and, therefore, could not be produced. This decision has been universally applauded: but this may be said to be but a trifling alteration, the declaration, in all other respects, remaining in strict form. Still it was an alteration so essential, that without it, the action could not have been supported. But we have gone much farther where the case required it. Where debts are contracted by two persons in partnership, and one dies, *at law*, the action can be supported only against the surviving partner; while equity, looking to the justice of the case, permitted recourse to be had to the estate of the deceased partner, because both had made themselves liable for the debt. A case arose in *Pennsylvania*, in which it was necessary to break through the pales of law, or suffer great injustice to be done. The deceased partner left an estate sufficient to pay the debt, while the survivor was a certified bankrupt. An action was brought against the executors of the deceased partner, and this Court supported it, in spite of the remonstrances of the defendant, who insisted on the rule of law. This was the case of *Lang*, &c. v. *Keppele's* executrix. 1 *Binn.* 123. Both from principle and precedent, then, we should be authorised to permit a declaration in covenant, according to the truth of the case. It is objected, however, that there is no occasion for this innovation, because, where land has been conveyed, the law would imply a promise to pay for it, so that an action of assumpsit might be supported. But that action would not answer the purpose so well as the action of covenant; for it often happens, as it did in the present case, that the greatest part of the written agreement is preserved, and very trifling alterations made. In this case, for instance, there has been no alteration in the price of the land. But how would you come at the price in

1818.

JORDAN
v.
COOPER
and another.

an action of assumpsit? On proving that the defendant had accepted a conveyance, the law would imply a promise to pay as much as the land was reasonably worth. But that would be leaving a matter in uncertainty, which the parties had fixed by their agreement. And the agreement would not be given in evidence, because it is against rule to support an action on the *case*, by the evidence of a *specialty*. Justice, therefore, could not be done. Many other inconveniences might be pointed out, resulting from an action of assumpsit ; so that I see no certain mode of doing equity to both parties, but by issuing the writ of covenant in the usual form, and permitting the declaration to partake so much of the nature of a bill in equity as to set forth the truth of the case. To this the defendant may plead any thing which in law or equity will serve him, and thus the parties may go to trial on the merits of the case.

I am of opinion that the judgment of the Court of Common Pleas should be reversed, and a *venire facias de novo* awarded.

GIBSON J. In *Pennsylvania*, a party on the record has always been deemed a competent witness to prove the service of a notice.

One of the issues in the cause was joined on the averment of the plaintiff's having, according to his covenant, executed and delivered a conveyance to the defendant on the 27th *May*, 1812. The jury were instructed, that evidence of a conveyance executed by the plaintiff, and accepted by the defendant, on the 3d *May*, 1813, (the date of the deed given in evidence) maintained the issue on the part of the plaintiff. I admit that the deed being *dated* of a day subsequent to the period when it is alleged to have been delivered, would not be conclusive as to the actual time ; but that the plaintiff might shew it was, in fact, delivered on the day laid in the declaration. If the issue had been left to the jury on that ground, all would have been well enough. But it is undoubted that the plaintiff's case must be proved as it is laid. *Phillips* v. *Rose*, (8 *Johns.* 392,) and the cases there cited are direct authorities. The Courts by which those cases were decided, have not, as our's, chancery powers, but follow the common law precedents in their system of pleading : but with us there is the same convenience and advantage in adapting the pleadings to

the truth of the case. The plaintiff, addressing himself to the equitable powers of the Court, ought to disclose such a case as would entitle him to equitable relief: but if he sets out a case that will entitle him to recover at law, he ought to prove a case that will entitle him to recover at law  If, instead of being founded on a specialty, the action were founded on a simple contract, subsequently altered, by the agreement of the parties, from its original terms, would it not be necessary to declare on the contract as it existed at the time of bringing the suit? There is the same reason to require, in the present instance, the plaintiff to set out the truth of the case. ·The declaration, is in effect a bill in equity ; for in *England* the plaintiff could not recover in a Court of law : I cannot, therefore, see why those equitable circumstances that are the very foundation of the action, should not be set forth. Performance by the plaintiff at a subsequent day, and acceptance by the defendant, is in equity equivalent to performance strictly at the day, and ought to have been alleged here. Principles of equity cannot be administered through common law forms, strictly such, without having recourse to fiction, which leads to serious inconvenience. The facts as they exist ought, in all cases where it is practicable, to be set forth. That might, I apprehend, be done in every instance except where the action of ejectment comes in the room of a bill for specific performance. Under our system it is sometimes absolutely necessary to change the form ; and of this *Lang* v. *Keppele*, 1 *Binn.* 123, is a signal instance.

It is also assigned as error ·that there was no replication to the defendant's plea, which set forth a release; and that if the replication of "no release and *per fraudem*," be considered such, then issue should have been taken or a rejoinder put in. In the case exhibited by the paper book furnished me, it appears the plaintiff replied generally to all the pleas, and took issue, and afterwards replied, without the leave of the Court, "no release and *per fraudem*." This last was a nullity. The replication of "*no release*" is insensible and void ; and though "*per fraudem*" might have been put in if the plaintiff had not replied before, yet the statute of 4 & 5 *Ann.* c. 16. which authorises a defendant to plead double with the leave of the Court, does not, except in *replevin*, extend to a plaintiff ; and even a defendant can plead double only to the declaration, for he cannot rejoin two several matters to the

1818.

JORDAN
*v.*
COOPER
and another.

plaintiff's replication, *Warren* v. *Ivie*, 2 *Str.* 908. As to the objection against the parol evidence offered to establish fraud in the defendant, it is sufficient to observe, that the evidence did not go to shew fraud in obtaining what the defendant calls a release, but fraud in retaining the money; the evidence was therefore plainly admissible to repel the allegation of payment. The clause acknowledging payment, and releasing the grantee, which is usually inserted by scriveners as a matter of course, has not the operation of a release, and cannot be pleaded as such; and is besides but slight evidence of actual payment. I am of opinion that the judgment be reversed.

DUNCAN J. The *Coopers* brought an action of covenant against *Jordan*. The declaration states, that on 11th *March*, 1812, it was covenanted between the parties, that the *Coopers* did, for certain considerations, grant, &c. to *Jordan*, three several pieces of land, and that *Jordan* should pay therefor 21*l.* per acre, in manner following, *viz.* 1000 dollars on 27th *May* then next, and the remainder on 1st *May*, 1813, and that upon the first payment being made, they would give to *Jordan* a good and lawful deed of conveyance, and deliver possession on 15th *April*, 1812. It avers, that on 27th *May*, 1812, they did make, seal, and deliver unto *Jordan* a good and lawful deed, which, on the same day, he did accept, and did deliver the possession on 15th *April*, 1812. The breach assigned is, that although *Jordan* did pay the 1000 dollars on 27th *May*, 1812, yet he hath not paid the remainder of the consideration money. *Jordan* pleads, 1. That the *Coopers* did not make and deliver a deed for the lands on 27th *May*, 1812. 2. That he paid the remainder of the consideration money on the 3d *May*, 1813. 3. That he paid them on 3d *May*, 1813, 1175*l.* 8*s.* 10*d.* which they accepted in full satisfaction. 4. That *John Cooper*, on the 3d *May*, 1813, acknowledged the receipt of 1550*l.* 3*s.* 10*d.* in full for the consideration money, and did release *Jordan*. To the three first pleas the plaintiff replies generally, and issue is joined. To the fourth, no release, and that the release was obtained by fraud. On the trial of the cause there were bills of exceptions on the admission of testimony, and a bill of exceptions to the charge of the Court. The plaintiff in error further contends, that there has been a mis-trial, as no issue was joined on the fourth plea, there being no rejoinder to the re-

plication of no release; and that the release was obtained by fraud. This objection will first be disposed of; the loose short hand mode of pleading in our Courts may in some instances be productive of inconvenience and uncertainty; yet a party has it in his power to prevent this; for, on motion, the Court would enter a rule to draw up the pleadings at large. Where a party has gone on to trial without a formal rejoinder to a replication of his adversary, I would struggle to prevent him from taking advantage of this. Our pleas are short entries, not drawn up in form. One leaves instructions with the clerk, and if there is any thing on the record from which it can be drawn that such instructions were given, the Court has constantly supplied the defect of formal entries. *Brown* v. *Barnet*, 2 *Binn.* 33. Where the word "issue" is inserted, after issuable plea, the omission of joining the issue is a clerical mistake, and cannot be taken advantage of on a writ of error. Here was no omission on the part of the plaintiffs below. They tendered an issuable replication to the plea of release. The Courts in *Massachusetts* have proceeded one step further than has yet been taken in our Courts; for they have decided, that if a party has appeared and defended the action before the jury on an issue, tendered by the plaintiff, but not joined, the verdict on such issue and judgment thereon, will be supported. *Whitney* v. *Cochran*, 9 *Mass.* 532. The words "and issues," were considered tantamount to a direction to the clerk to join the issue. Here the general directions to the clerk by the rules of Court were instructions to the clerk to join the issue. It was a clerical omission not to be taken advantage of after verdict. The case falls clearly within the rules of Court, and the power of the Court to make such rules since their decision in *Vannater* v. *Anderson*, 3 *Binn.* 417, cannot be questioned. It was decided, that under the general powers of the Common Pleas to regulate its practice, it had authority to make a rule requiring affidavits of defence, and directing judgment if no affidavit was filed within a certain time. That rule was admitted to be questionable, and was certainly liable to objections, which cannot be made to this. Being considered by the Court as doubtful, yet having been established, the Court would not pronounce it to be void. There is in this no error. As to the replication being double, I consider the defendant to have taken issue on them; and although he might

have taken advantage of this on demurrer, the verdict will cure it. However informal the replication was, the issue was not immaterial.

The second error assigned is, the admission of one of the plaintiffs to prove notice on the defendant to produce certain deeds. It will be observed that one of the deeds was the very one which *Jordan* had pleaded in bar of plaintiff's action. It is very questionable whether a bill of exceptions would lie to the evidence received by the Court. The Court, on the proof of the notice, decided that the plaintiffs might go into parol proof of the contents of the deeds, and thereupon the defendant's counsel produced them, and delivered them to the counsel of the plaintiffs. The deed from *Cooper* and wife was then offered in evidence and received, and exception taken to this. The contents of the deed were not given in evidence. Where then is the injury done to the defendant? The plaintiffs might have waved the parol evidence of the contents. The decision of a Court, that evidence shall be allowed of the contents of a deed, which evidence is not given, but *the deed* itself, would not strike me as a reason to reverse a judgment. The Court say, on this notice we decide that the plaintiffs may give parol evidence of the contents of a deed. The defendant, rather than this should be done, produces the deed, and delivers it to the plaintiffs. Nothing followed on the decision. No consequence resulted from it. All was done away by the production of the deed. The secondary evidence was not given, because the defendant put into the plaintiff's hands the primary. But the plaintiff was competent to prove the notice. Whatever may be the rule in *England*, and in other states of this union, in this state the practice has been, and I believe universal, for the party to prove the service of notice, to produce papers on the trial of a cause, to prove notice of taking depositions. The gentlemen of the bar concur, that this has been the practice here, and I know it to have prevailed in the Courts of Common Pleas, in the Courts at *Nisi Prius*, and the Circuit Courts, and I never heard it called in question.

The third error is the admission in evidence of the conveyance of 3d *May*, 1813. It is alleged by the plaintiffs in error, that there is a variance between this deed and the deed alleged in the declaration ; *that* being stated to have been executed, delivered, and accepted on 27th *May*, 1812.

It is admitted, that if the day is not material, the defendant cannot make it so by his plea. At law in executory contracts, the day of performance may be material. But, this does not hold in equity. The day there is only modal, unless it is made essential by the express contract of the parties, or some special circumstances exist destroying all claim to the interference of a court of chancery. A court of equity frequently decrees a specific execution of articles, where the action has been lost at law by the default of the party seeking the performance, if it be conscientious that the bargain should be performed. To sustain an action at law on executory contracts, performance or the offer to perform must be averred according to the very terms of the contract. In equity this is not necessary. When chancery interposes to compel the performance of an act which has been covenanted to be performed, it always treats the subject as if it had been performed at the time contracted. The act which chancery decrees to be done, is the same act as would have existed, had it been done when it was agreed to have been done. *Reeves' Domestic Relations, tit. Chancery,* 446. Now as our Courts of law, in the usual course of their proceedings, adopt the principles of a court of equity, of considering, when justice requires it, *that to have been performed which ought to have been done, and when it ought to have been done,* the performance is then stated according to its equitable operation, and I can see no real difficulty in considering this by relation as performed according to the terms of the contract; the defendant himself having so considered it, by the acceptance of the deed, and having enjoyed the benefit of the contract by the delivery of possession on the day stipulated. If this be not so considered, then the plaintiffs are without a remedy on the covenant of the defendant. They have executed and delivered the deed. The defendant has accepted it and put it on record. They have delivered possession which is now retained by the defendant. The defendant has waved the performance on the day; has accepted a conveyance; admitted a performance, substantially, as if it had been performed on the very day. The variance here cannot be fatal. The matter alleged, and the matter offered to be proved, agree in every thing, except the day. If that be no material part of the issue, then the variance is unimportant. It is, to be sure, a rule in pleading, that every material fact

that is issuable and triable, must be averred to have happened on a particular day. It is however equally so, that it is not necessary to prove the day precisely as laid, unless the particular time is material. Thus in an action on a promissory note, stating, that on such a day the defendant made the note; proof, that he made a promissory note on a different day would be sufficient. *Phillips's Evidence*, 168. And yet the objection would equally hold, that it is a different contract. The medium of proof cannot make a difference; whether it be by record, deed, or parol proof, the day of acceptance is no more material than the day of contract. In *Brooks* v. *Bemiss*, 8 *Johns.* 455, in an action for a libel, the defendant pleaded the general issue, with notice of special justification, that he would give in evidence, a record of a trial of *June* Term, 1810. The record produced, was of a trial in *June,* 1809. The variance was held not to be material, and the record admitted. It would have been admissible in special pleading. The time is not material, so as it appears to be before publication of the libel. If it was to be considered as a specific allegation of a material time, there would be a repugnance between the allegation and the proof. But if it be only a substantial allegation of the fact of delivery and acceptance of the deed, of a time which is shewn to be before action brought, the variance is immaterial, and the proof in substance supports the allegation. If a *profert* had been made of the deed, or if it had been laid with a *prout patet*, or if the declaration had stated, that it bore date that day, then it might have been considered a description of the deed, and the variance fatal. But this is an allegation of substance, and not of description. There can be no good reason why, when a fact is not material to be alleged on the exact day, and need not be proved exactly as laid, it should become material, because it is to be proved by deed. There are two sorts of allegation; the one matter of substance, which may be substantially proved; the other matter of description, which must be literally proved. This I take to be of the first class, and that it was substantially proved; the day being altogether immaterial on a contract executed; the time of delivery unimportant; as it was accepted as a performance of the contract. But it is contended, that the plaintiffs should have specially set this out as a new agreement to accept on that day. This could not

have been done. If there was a parol agreement substituted for the written one, it could not be the foundation of an action of covenant. Nor could it be joined in an action on the sealed instrument. To admit this, would be an innovation on the forms of pleading; would be adding a new substantive cause of action by parol, contrary to the writing, and to which the defendant was not summoned to answer. Nothing but the high respect I entertain for the opinions of the other members of the Court, and a diffidence in my own, where I may be so unfortunate as to differ from them, could make me distrust the opinion I have formed. I have given their opinions their deserved great weight, and endeavoured, but in vain, to make my judgment bend to them. In executory contracts, however the law may be, I feel assurance in the correctness of the principle, that where the party has enjoyed the whole benefit of the contract, has accepted a conveyance of it at a subsequent day, the day is as immaterial as the day when the contract was entered into, or as the day laid in an indictment for murder. The act being done and accepted, the property enjoyed without molestation, according to the letter of the contract, totally extinguishes the materiality of the day. The party has notice. How can he be taken by surprise? He has enjoyed the property; he has accepted the deed; he pleads the deed in bar of plaintiff's recovery. He has notice to produce it; he does produce it. What is the reason that the time and place must be laid of all issuable facts? The time that it may appear the action was brought after cause of action arose. The place on account of the *venue.* Yet this is not material even in local actions, where the fact may be proved any where within the county, although at a different place, unless where the place is set out by particular description, as by metes and bounds, or by name. Nor is the precise time to be proved, unless it is necessary to support the action, or it is on a writing set out by way of description. Yet I am reconciled to the course here adopted by the Court; the mode of setting forth the execution and acceptance, or tender of a conveyance, in the declaration, after the day, so that the defendant may be apprised, and thus the case proceed to trial. As the Courts here, are in the habit by the medium of a jury, of doing, in such cases what a Court of Chancery would decree, the non-performance at the day, the lapse of time may be accounted for by

a plaintiff, and defendant being informed of the fact, be pre-pared to shew that the lapse of time is attended with such circumstances, as that there ought not to be a recovery. A declaration thus modified, would answer the purposes of justice, better than putting the plaintiff to an action of *assumpsit*, either express or implied, which would not in all cases meet the justice of the case, and in many would be attended with difficulties, and in one case operate most unjustly. That is where the purchaser dies, having conveyed away the land, and not leaving an estate sufficient to pay all his debts, by specialties and simple contracts.

4. The fourth error assigned is, in the admission of the evidence of *Edward Nagle*. This, on the principles already stated, was clearly admissible. It tended to prove the important fact, the acceptance of the deed, and the determination of *Jordan*, to hold the land by it.

5. The evidence of *Shuler* and *Windt*. This was equally so. On the issue on the plea of payment, neither the receipt nor the acknowledgment in the body of the deed, nor the acquittance and release estopped the plaintiffs from shewing the truth of the fact, that the money was not paid. There being no Court of Chancery to put the release out of the way, it was competent on this plea to grant relief by shewing the receipt to be merely formal, that the deed was entrusted to *Jordan* without payment of the money; the sole evidence of payment was destroyed.

Five points were made by the defendant's counsel, on which the instruction of the Court to the jury was required.

1st. Did the proof of the execution, delivery, and acceptance of the deed of the 3d *May*, 1813, support the plaintiff's cause in the first issue?

I am of opinion, for the reasons I have stated, that it did.

The 2d and 3d present nearly the same question. The 2d, Did not the execution, delivery, and acceptation of the deed of 8th *May*, 1813, annul and supersede the written articles so as to take away from the plaintiffs the action of covenant on these articles?

3d. Did not the release in the body of the deed, and the receipt at the foot operate as a conclusive bar to any recovery by the plaintiffs in an action of covenant on the articles of agreement?

I have not heard, nor can I conceive, any reason, why

when one party has performed his covenants by delivery of the conveyance, this should supersede and annul the covenants of the other. It is this very act of performance which enables him to support his action of covenant. What are the covenants? The *Coopers* covenant to convey certain lands for a certain sum. *Jordan* covenants to pay that certain sum for the lands when conveyed. The *Coopers* say they have conveyed, and therefore they demand the money. Will it lie in the mouth of *Jordan*, in answer to this demand, to say, " True, you have performed your covenants, I have got your lands, the possession and the title; have enjoyed the benefit of these covenants, but the performance of yours has extinguished my covenants." This is a course of reasoning my understanding cannot comprehend.

If the third point is tenable, then, however clearly the plaintiffs might have established the fact, that the money was not paid, and the defendant made a fraudulent use of the deed entrusted to him by converting it into a release of money which never had been paid, we having no Court of Chancery, they would be without any remedy.

But as a court of chancery could relieve, whatever a court of chancery would do, on the state of the pleadings, the replication of *non solvit*, no release, and that it was obtained by fraud, our Courts constantly exercise the same equitable powers. But this could be done in courts of common law. There was a case, the same as this in all respects, decided by the general court of *Maryland. Henry Oneal* v. *William Lodge*, 3 *Har. & M'Hen.* 433. It was an action of covenant on the sale of a tract of land, at 45 shillings per acre. The plaintiff shewed on the trial that the tract contained 98 acres, and that the contract for sale was made on 1st *August*, 1789; and that on the 29th of the same month, after the date of the deed, 75*l.* were paid in part payment of the land; the defendant produced a deed which had a receipt indorsed thereon for the whole consideration, and then his counsel moved the Court to instruct the jury, that the receipt on the deed, and the acknowledgment of payment in the body of the deed, were conclusive evidence of payment.

But the Court, as the Court here have done, refused to give this direction, and said this was only evidence of payment, because it was but the mere formal part of the deed, when, perhaps, nine times out of ten, there was not a shilling

1818.

JORDAN
v.
COOPER
and another.

paid. *There* was a conveyance of the land, and yet covenant supported on the articles ; *there* was a receipt indorsed; acknowledgment of payment in the body of the deed, and so far from being considered conclusive, it was, and very justly, considered as evidence of the very lowest order.

The fourth and fifth points are but repetitions.

In my view of the case, I cannot say that there is error either in the admission of the evidence, or opinion of the Court. But as the majority of the Court are of a different opinion, the judgment is of course reversed.

Judgment reversed, and a *venire facias de novo* awarded.

See *Hamilton* v. *The executors of M' Guire, ante,* 355.