# Lehr *against* Beaver.

Upon the sale by a husband and wife of the wife's lands, and a subsequent separation, an agreement between them that one half of the unpaid purchase money shall be paid to the attorney of the wife for her sole use and maintenance, upon her giving security to indemnify the husband against any debts which she might contract, is binding between the parties; and upon the money having been paid by the purchaser to the attorney of the wife, the husband cannot maintain assumpsit for money had and received against him, although the wife had not given the indemnity against her debts, which the agreement required: he could only sue and declare specially upon the agreement, setting out a breach, and the damages then recoverable would be measured by the amount of debts of the wife which the husband had been obliged to pay.

ERROR to the District Court of *Allegheny* county.

Samuel Lehr against John F. Beaver. This was an action on the case, in which the plaintiff declared in *assumpsit* for money had and received, laid out and expended, paid and advanced, &c.

The facts presented this case. In 1834 Mary Lehr, the wife of the plaintiff, having derived a tract of land by descent from her father, joined her husband in a sale and conveyance of it. In 1841 the husband and wife having separated, entered into a written agreement by the terms of which the deferred payments

[Lehr v. Beaver.]

for the land, amounting to $1200, were to be divided between them; one half thereof to be paid to John F. Beaver, Esq., the attorney of the wife, for her sole and separate use, upon her giving security to indemnify the husband against any debts which she might contract. The money was thus paid to John F. Beaver, Esq., who gave notice of it to the wife, who was unable or neglected to give the security required by the agreement, when this action was brought to January Term 1843 by the husband, to recover the money.

Justice SHALER directed a verdict for the plaintiff, subject to his opinion upon the points reserved. He subsequently delivered an opinion setting aside the verdict and rendering a judgment for the defendant, on the grounds that the contract was binding between the parties, and that the action in its present form could not be supported, but only upon a special declaration upon the agreement, and a breach of it. This opinion was the subject of review upon the writ of error.

*Woods,* for plaintiff in error, argued that the agreement between the husband and wife was absolutely void, and cited 6 *Whart.* 576; 4 *Whart.* 25.

*Beaver,* for defendant in error.

At the common law, agreements *post nuptial* between husband and wife were utterly void; but in equity such contracts are not only valid, but enforced against the husband; 2 *Story's Eq.* 601; and settlements resting upon such agreements, as against the husband himself, are held good. *Atherly on Mar. Set.* 161. Nor have these cases been supported without grave examination. See *Lady Arundell* v. *Phipps,* (10 *Ves.* 148). Lord Eldon said, in that case, " that husband and wife, after marriage, could contract for a *bonâ fide* and valuable consideration, for a transfer of property from the husband to the wife; and that it was so both in law and equity." So in *Nottleship* v. *Clerk,* (2 *Lev.* 149). The same point was determined in *Livingston* v. *Livingston,* (2 *Johns. Chan. Rep.* 539.) See 1 *Fonb. Eq.,* B. 1, *Ch.* 2, *s.* 101, 102, &c. That she may make a valid agreement with her husband, see 3 *P. Wms.* 339, 335; 15 *Serg. & Rawle* 84; 1 *Vesey* 538; *Finch's Rep.* 56. But it is urged that *M'Kennan* v. *Phillips,* (6 *Whart.* 571), is in point. The principle of this case is founded on the most substantial basis. The court has no right to decree perpetual separation; and neither the wife nor the husband shall be allowed to establish a claim on a violation of conjugal rights. 3 *Johns. Ch.* 521. Therefore it has been long since settled that chancery will not enforce an agreement to live separate and apart; *Dick.* 791; 3 *Vesey* 352; except in the single instance where the personal safety of the wife requires such a decree. *Elworthy* v. *Bird,* (*Sim. & Stuart* 372).

[Lehr v. Beaver.]

The case of *M'Kennan* v. *Phillips* is nothing more than a refusal to assist the party in a violation of conjugal rights.

In the case now before the court on the point reserved, there is no agreement to live separate, and the contract is an allowance to the wife out of her own separate estate. She was in possession of the mortgage and bonds, and a Court of Chancery would have compelled a settlement before Lehr could have recovered the balance of the money. Although the mortgage and bonds were in the plaintiff's own name, yet as he could not recover the money without suit, the court would have compelled him to make provision for the wife, before he would have been allowed to take the residue of her property, when he was not living with, or supporting her.

Where the separation had taken place previous to the agreement, as in this case, it was held that an agreement between husband and wife was valid. *Carson* v. *Murray*, (3 *Paige* 483); 1 *Dow. & Clark*, 519.

The plaintiff having renounced his marital right to this money, he should not be allowed to resume that right and recover it against conscience; and the contract or agreement being supportable in equity, a reasonable time will be given to give the security stipulated for, on such terms and at such times as by an equitable decree under all the circumstances the *cestui que trust* should do.

The opinion of the Court was delivered by

KENNEDY, J.—The first question presented by this case is, whether the agreement reduced to writing and signed by the plaintiff, be void or not. It is contended on behalf of the plaintiff that the agreement being made with his wife was void, and therefore could have no effect whatever upon his right to demand and receive the money in question. It is no doubt true, that in England, according to the common law, as Littleton says, section 168, " A man may not grant, nor give his tenements to his wife, during the coverture, for that his wife and he be but one person in the law;" upon which my Lord Coke observes, 1 *Inst.* 112, " This opinion is clear; for by no conveyance, at the common law, a man could, during coverture, either in possession, reversion or remainder, limit an estate to his wife." And again, in page 3, *a*, of 1 *Inst.*, he says, " A *feme covert* cannot take anything of the gift of her husband." See also *Moyse* v. *Gyles* (2 *Vern.* 385); *Beard* v. *Beard* (3 *Atk.* 72), where the same principle is recognized and laid down. But this doctrine is not universally true, and must be understood with various limitations; for though a husband cannot, at law, in England, convey to the wife *immediately*, yet he may give to a trustee for her benefit, and the gift will be good. 1 *Inst.* 112, *a*; *Bunting* v. *Lepingwel* (4 *Co.* 29, *b.*) He may give to his wife by *last will;* because such gift cannot take effect till his death, when the coverture is determined. *Littleton*, sect. 168; and in *Lawson*

[Lehr v. Beaver.]

v. *Lawson* (1 *P. Wms.* 441), Lord Chancellor PARKER seems to have thought that a *donatio causâ mortis* by the husband to the wife would be good, as it might be considered in the nature of a legacy. In *Seeling* v. *Crawley* (2 *Vern.* 386), a quarrel having taken place between the husband and wife, they agreed to separate, and the husband gave his note to the father of his wife for the payment of £160 to him on demand, being the portion the father had given with his daughter; the father agreeing at the same time to save the husband harmless from any debts his wife might contract, and against all demands for her maintenance. The wife with her child thereupon went and lived with her father, who supported and maintained her. The father offering to perform the agreement on his part, filed his bill against the husband to compel payment of the £160; and notwithstanding the husband offered to take his wife home and maintain her and the child, and to satisfy the father for the time past, yet the court decreed the husband to pay the £160 to the father upon his giving security to indemnify the husband against the debts and maintenance of the wife and child. See the cases also there referred to by Mr Raithby in his note, showing clearly, as a general doctrine, that equity will, in cases similar to that case, and even where there are no trustees, decree and carry into effect an agreement for a separate maintenance for the wife; though it may be that it will not establish an agreement in all cases between a man and his wife to live separate. *Wilkes* v. *Wilkes*, (2 *Dick.* 791). Yet it has been done in many cases. See *Guth* v. *Guth* (3 *Bro. Chan. Rep.* 614), and the cases there cited; and also *Elworthy* v. *Bird* (2 *Simons & Stuart*, 372).

But by the agreement of the plaintiff in the case under consideration, Mr Beaver, the defendant, is named by the plaintiff as the attorney of his wife; and he thereby agrees that one half, to-wit, $600.22½ of the instalments due and remaining unpaid of the purchase money, under the sale made by the plaintiff and his wife, of his wife's land, be considered the money of his wife absolutely for her sole and separate use; she to give him security, such as shall be agreed on by Mr Robert Woods, and the defendant Mr Beaver, to indemnify the plaintiff against any debts or other claims for her maintenance during the time that he and she should live separate. And he also thereby further agrees that "the *money of the said Mary* (meaning his wife), being the *half of the said payments* (before stated to be $1200.45) so due, be *paid into the hands of John F. Beaver*, attorney *for the said Mary;* to be paid to her on the bond of indemnity aforesaid being delivered to the said R. Woods, Esq." Although the defendant is spoken of in the agreement as being the attorney of the plaintiff's wife, yet he is in fact thereby made her trustee, with full power to collect and receive for her separate use the one-half of the $1200.45, still outstanding and unpaid in the hands of the purchasers of her land. Thus the

VIII. — 14

intervention or interposition of Mr Beaver the defendant as a trustee is sufficient according to the principles even of the common law of England to render the agreement valid and binding upon the plaintiff. But if it were not so, it is perfectly clear, that it would be good and binding upon him according to the principles which prevail in and govern the courts of equity there in regard to agreements made between husband and wife. Gifts from the husband to the wife may be supported, as her separate property, if they be not prejudicial to creditors, without the intervention of trustees. Vide the *Countess Cowper*, before Sir JOSEPH JEKYLL, cited in 1 *Atk.* 271; 3 *Ibid.* 393; *Slanning* v. *Style*, (3 *P. Wms.* 334); *Moore* v. *Freeman*, (*Bunb.* 205); *Lucas* v. *Lucas*, (1 *Atk.* 270, cited 3 *Ibid.* 393; *Brinkman* v. *Brinkman*, cited 3 *Atk.* 394; *Graham* v. *Londonderry*, 3 *Atk.* 393); *Fenner* v. *Taylor*, (1 *Simon's Rep.* 169.) The claim ·of the wife here, to the money in dispute, as it arose from the sale of her real estate, is powerful at least, if not irresistible, in an equitable point of view, independent of the agreement to give it to her. The husband could never have had any right or claim to it, if his wife had not at his solicitation, which may have been very importunate, and such possibly as could not have been resisted, except at the expense of her peace, consented to and joined him in making a sale of the estate. He, in completing the sale, took the securities for the payment of such portion of the purchase money as remained unpaid at the consummation thereof, in his own name; and having thus made himself the absolute, or at least legal owner, of the proceeds of her real estate, he cannot live with her afterwards as he did before, and she is obliged to separate herself from him. In this state of things he agrees to divide equally with her the residuary portion of the proceeds of her estate. Why not give her the whole of it, if she kept him indemnified against all claims for and on account of her support and maintenance, as he required she should for allowing to her only one-half of it? It does appear to me that he would have given her the whole of it, if he had been moved by a conscientious feeling. The circumstances of the case imposed upon him a moral obligation *to do* at least all he agreed to, and more, and were clearly sufficient to make his agreement binding upon him, upon mere principles of equity, as they are distinguished in England from those of the common law. This being the case, the agreement in Pennsylvania will be considered as binding at law; for equity has ever been regarded as part of the law in it. *Pollard* v. *Shaeffer*, (1 *Dal.* 211, 213, 214); *Wikoff et al.* v. *Coxe et al.*, (1 *Yeates*, 358). And hence courts therein will allow a defendant to put in a plea founded *purely upon equity alone*. *Jordan* v. *Cooper*, (3 *Serg. & Rawle*, 578); *Murray* v. *Williamson*, (3 *Binn.* 135). And upon the same ground, an action for a partnership debt may be supported in Pennsylvania against the executor of a de

[Lehr v. Beaver.]

ceased partner, although another be living, where the survivor is insolvent or bankrupt.  *Lang* v. *Keppele,* (1 *Binn.* 123).

Seeing, then, that the agreement was not void, but binding and still in full force, and executory also, as respects all that was to be done on the part or behalf of the wife, the plaintiff, if it has been broken on her part, can only entitle himself to recover by declaring specially on the agreement, showing what were the terms and conditions thereof, as also the breaches of the same. From which the inevitable conclusion is, that he cannot recover here in a general *indebitatus assumpsit* upon any of the common money counts, which are all that his declaration contains.   In a special action, founded upon a breach of the agreement, he would, upon proving the breach, be entitled to recover damages, in amount equal to the value of the loss or injury sustained by reason thereof.   But it does not appear from the evidence given on the trial of the cause below, that he has ever been called on to pay, much less paid, any debts or claims created by his wife for her support or maintenance; nor did it even appear that any such existed.   It would therefore seem that he has sustained no *actual* damage.   It may therefore be, even in a proper form of action, that he would only be entitled at most to recover nominal damages, because security for indemnity had not been given in due time. But a tender of such security to the plaintiff at any time before a proper suit is brought by him, if no actual damage or loss shall have been sustained by reason of the conduct of his wife in violation of the agreement, would certainly defeat a recovery.

Judgment affirmed.