The opinion of the Court was delivered by
Gibson J.
Some of the errors assigned in respect of the
charge, involve principles exactly the same as some which arise on the bills of exceptions to evidence. Without examining these in detail, I shall consider the principles of law on which they depend ; and in doing so, I shall inquire whether the contract was originally binding on Bellas, and whether if it were, Hays could support this suit, under all the circumstances of the case, and particularly under the present form of the declaration. I will then consider one or two exceptions that belong to no particular class.
To the original obligatory effect of the contract, it is objected, that it does not appear that Clark had authority; and even if he had, that he ought to have sealed the instrument, not in his own name, but as the attorney of Hays; without which the latter could not be bound, and consequently that neither is bound.
Every authority of this kind, must be by deed, that it may appear, whether the attorney had a valid commission, and whether it were duly pursued. Co. Lit. 48. b. There wag no evidence of the existence of a letter of attorney to Clark, and what operation the want of it ought to have on the obligatory effect of the contract, was directly made a question for the opinion of the Court. On this ground then, it is plain, Hays was not bound by the contract; but I take it, *438 the articles were nevertheless admissible evidence on the issue of non est factum.s for being in any event the deed of Bellas, they went to support the issue on the part of the plaintiff, who, being bound to no particular order of proof, might, if he pleased, give the articles of agreement in evidence first, and offer the letter of attorney afterwards. The first bill of exceptions is, therefore, not sustained. Then as to the other ground; the article of agreement purports, on its face, to be made between Hays, the plaintiff, by his agent Clark, and the defendant; but it is signed and sealed by the two last only, and not by Hays. It is clear beyond dispute, this was not a good execution of the authority, if any existed. Comb’s case, 9 Rep. 76. b, is express, that the act must be done in the name of the principal, and sealing being an essential part of the execution of a deed, the seal of the person giving the authority must be affixed. In 3 Vin. Ab. Authority, F. pl. 4, there is a case exactly like the present. The king authorised a certain surveyor to make leases, who executed the power by deeds, beginning as in the case before us, as if the principal were a party, and concluding, “ in witness whereof the said surveyor hath put his sealand it was held, he ought to have put, not his own seal merely, but that of the king. But the counsel for the plaintiff, relies on evidence of acts of confirmation, by both parties treating these articles as obligatory on Hays. But can any confirmation short of putting his seal to it, make the writing the deed of Hays, so as to give Bellas a remedy at law on it as such ? — An, imperfect specialty contract may be so ratified by parol, as to give an action of assumpsits but here, mutuality of remedy on the same instrument is the essential matter. On both grounds then, I think Hays was not bound. It does not follow however, that in every case, neither will be bound if both are not: for covenant may be maintained on a deed poll. The true distinction appears to be taken in Northcott v. Underhill, 1 Ld. Raym. 388, where it is laid down, that relative covenants are void, whenever the matters to which they relate, and on which they depend, cannot by the deed take effect. It was the case of a mortgage, with a covenant in the same instrument to pay the money, and the deed for want of enrolment being insufficient to pass an estate in the land, it was argued the covenant was therefore void; but as it was separate and independent, it was held, it might well *439 stand by itself. But in Fromentin v. Small, 2 Ld. Raym. 1418, the case was very like the present. The plaintiff was the attorney of James Fromentin, and in his name, and as his attorney, demised a house to the defendant, who covenanted to pay the rent. In an action of covenant, in which non payment of the rent was assigned as a breach, there was a demurrer; and it was admitted by counsel, and denied -by nobody, that Jumes Fromentin the principal, could not have maintained covenant on the lease, because he was no party to the deed; and it was adjudged by the Court, the action would not lie even in the name of the attorney, who was a party, because the lease being void, the covenant to pay the rent, was also void. Where however, the covenants are independent, either party may sue without regard to the validity of the covenants on the part of the other. Now in the case under consideration, payment of the purchase money was entirely dependant on the conveyance of the right; insomuch, that the latter was expressly made a condition precedent. By the articles, Hays was bound to nothing, and Bellas ought not to be bound or discharged as Hays might choose to consider him. As then the articles of agreement created no responsibility, and were altogether inoperative, the direction of the Court was, in this particular, wrong, and the judgment must be reversed.'
The point just disposed of being decisive against the plaintiff’s right, it would be unnecessary to pursue -the inquiry further, were it not that an act of assembly renders it the duty of this Court, to pronounce an opinion- on every point decided by the -Court below: The defendant contends the contract was void on-the ground of want of consideration also, because he gave evidence to affect the" validity of the patent right contracted for, and also to shew the invention was not valuable. Of this the J udge took no further notice, than as it might be evidence of actualfraud, on which, alone, he, as to this part of the cause, put the inquiry to the jury ; and this he did without deciding on the validity of the respective patents. I do not consider the evidence so important on the ground of want of consideration as misconception by the parties, of the existence of a fact: although I agree, that where the Consideration is an equivalent for the obligation which the other party incurs, failure of it is -a good ground for relief. But I choose to consider the case *440 on the ground of mistake, which is perhaps not very dif. ferent from want of consideration. At first view there appears to be some contradiction in the cases on the subject- several, mistake only, without suppression of the truth or suggestion of a falsehood, has been held insufficient to set aside the agreement, as in Can v. Can, 1 P. Wms. 723. So in Pullen v.Ready, 2 Atk. 587, Lord Hardwicke says, “ there is nothing more mischievous than for this Court to decree a forfeiture after an agreement, in which, if there is any mistake, it is the mistake of all the parties to the articles, and no one of them is more under an imposition than the others.” It will be found, however, this doctrine is applicable only to cases where the right or thing, which is the subject of the contract, is evidently of itself doubtful, which is a circumstance always sufficient to support an agreement, if no unfair advantage be taken in other respects. In such case, the assent of the parties to treat on the subject as it then stood being complete and full, they proceed on an evident supposition, that the fact which is the cause of the agreement is doubtful, and each is understood to take on himself the risk of its turning out in a way favourable to him. On this principle, every wager and every contract pf insurance depend; and without it there could be no such thing as a compromise of a doubtful right. Where a párticular fact is known to he doubtful, or supposed to be so, if the party to be benefited neglect to secure himself by a covenant, he will be without remedy, if it turn out contrary to his expectations, for he will be considered as having paid his money for the benefit of a chance. It would seem to me, that whether the invention which is the subject of the plaintiff’s patent were valuable or not, was in its nature doubtful, and that the defendant took the risk of that matter on himself ; but the validity of the right, on the ground of originality of invention, is another matter of which I will spéak hereafter. The cases of this kind, to be found in the books mostly relate to agreements, the intention of which was to settle family disputes, which is a favourite object with courts of chancery; yet even there it is held, the parties must be acquainted with their rights as far as they can bt ascertained, or at least with the nature and extent of the information that can be obtained respecting them, which in the absence of fraud is going pretty far. Pusey v. Disbouverie, 3 P, Wms. *441 316. There is however another class of cases where an agreement entered into on an erroneous presumption by one of the parties of the existence of a fact, is held to be as to him of no force, for he gave his assent to the agreement, not absolutely, but on conditions which are not verified by the event: and it will be immaterial, whether all parties were equally ignorant or not; for if there was any concealment of a fact within the knowledge of the opposite party, that of itself constitutes fraud, which is a distinct ground of relief. Thus in Cocking v. Pratt , 1 Ves. 400, an intestate’s widow and daughter entered into an agreement as to the personal estate: the daughter married and died: the husband brought a bill to be relieved against the agreement, on the ground of mistake on the part of his wife as to the value of her share. Sir John Strange, in the absence of the chancellor, observed, that whether there had been suppressio veri, was not clear on the evidence, but that there was another foundation to interpose, to wit, that it afterwards appeared the personal estate was greater than the daughter supposed, and that the husband would be permitted to come into chancery to take advantage of her want of knowledge. So in Lansdown v. Lansdown, Mosely, 364, where two brothers claiming an estate applied to a country schoolmaster, who, (as was to be expected,) ignorantly gave it in favour of the younger, because he had read in the clerks’ remembrancer that lands cannot ascend, and thereupon the eldest having consented to divide the land, saying he would rather do so than go to law even if he had the right, and having created deeds of lease and release, these were decreed to be delivered up, although there was riothing like concealment, or exclusive knowledge of a fact or any thing else, imputable to any one. There are many other cases to the same purpose. Turner v. Turner, 2 Ch. Rep. 11. Bingham v. Bingham, 1 Ves. 126. Gee v. Spencer, 1 Vern. 32, and Luxford's case there cited. If then the patent right of Bernard were invalid, there can be little doubt the defendant would not be bound by the contract; for it is out of all reason to suppose he purchased the right under any other notion than that of its being a valid one. Yet I confess I cannot see how, on the present state of the pleadings, he could take advantage of the defect; for, according to the decision of this Court in Jordan v. Cooper, 3 Serg. & Rawle, *442 564, an equitable ground of relief must be put on the record, and instead of pleading ignorance and misconception of the fact, he has put his defence by the special pleas, on want of consideration coupled with actual fraud, which is a totally different ground. It cannot be said there was no consideration ; for the very sealing of a deed, is in equity as well as at law, evidence of consideration, and although equity will sometimes postpone the payment of a voluntary bond to other debts, yet as between the parties it will not relieve the obligor from the payment of his obligation even where there is no pretence of consideration, unless he can affect the obligee by direct evidence of-fraud. Wright v. Moore, 1 Ch. Ca. 157. The issue., then, was fraud or not, and did not embrace the ground of mere mistake. In putting the case, therefore, to, the jury on the point raised by the pleadings, the Court did very right. Still, however, the Judge erred in refusing to instruct the jury on the subject of the relative validity of the conflicting patent rights; for that w.as a consideration as necessary to settle the question of fraud, as that of ignorance and mistake. The reason given, that the patentees were not parties in Court is entitled to no weight.
But taking these matters to be in favour of the plaintiff, the question would still occur,has he entitled himself to this suit by executing and tendering a conveyance of the right, according to the true intent and meaning of the articles ? Per- ■ formance of his part of the agreement within a reasonable time is expressly made a condition precedent. It was the obvious meaning of the parties, that the final deed was to be executed and transmitted within a reasonable time from the date of the articles. “ The said James agrees to complete and perfect the said conveyance by deeds duly executed and acknowledged, and as soon as practicable forward to the said Hugh.” I pay not the least regard to juxtaposition. As the time "the patent had to run was hourly expiring, it was an important object to the defendant to obtain the conveyance as soon as possible : common sense therefore requires, that the words “ as soon as practicable” should, notwithstanding their relative position in the sentence, be applied as well to the execution as to the transmission of the deed. That time should not unnecessarily elapse between these two periods only, could not be particularly important, but that both should *443 , arrive as early as possible, was essential to the full enjoyment of the property to be acquired, the value of which was daily decreasing. The averment in the declaration, that the plaintiff executed a conveyance on a certain day, and transmitted it as soon as practicable after-wards, is consequently ill: it should be, that he both executed, and transmitted, as soon as practicable after the execution of the articles ; or, if there were special circumstances equivalent, in equity, to strict performance at the stipulated time, such, for instance, as acquiescence by the defendant, these ought to have been specially set out, to give the opposite party an opportunity to traverse or demur. This not having been done, the defect is not helped by the verdict: for by the express terms of the contract, the plaintiff could not, before performance on his own part, call on the defendant for any thing; and the omission of a part of the title is a defect that nothing can cure. The declaration was, doubtless, drawn in the present form to meet the truth of the case, which would, I am inclined to think, preclude the plaintiff from recovering, under any form of pleading. ' Generally speaking, time is not, in equity, of the essence of the contract: but would chancery under the circumstances of this case dispense with strict performance ? That would pretty much depend, as to one ground of defence, upon whether the plaintiff had practised any considerable delay. An interval of fifteen months, between the execution of the articles and the tender of the deed, would certainly require very particular circumstances to justify it. The case of Gibson v. Patterson, 1 Atk. 12, in which Lord Hardwicke is made to treat time as altogether immaterial, is not supported by -later decisions; and it is now fully established that considerable delay, without sufficient reason to account for it, will be considered satisfactory evidence of abandonment. But there are other instances, independent of abandonment, where time is essential: for if after the period at which the plaintiff ought to have performed his part, circumstances occur which materially alter the value of the property, or diminish the benefit of the contract, equity will not interpose. In the case before us, every hour decreased the value of the property, and rendered the consummation of the agreement an object of less interest to the defendant. Could the plaintiff on the ground of a compensation, tender a deed on the last day of the patented term, and maintain a suit ?. The pre~ *444 sent case differs from that only in degree. I have no doubt equity would hold jurisdiction of this contract, for the purpose of executing it specifically, although it relates to a personal chattel; and this as well on account of the inadequate nature of the satisfaction to be obtained at law, as that of the agreement itself being incomplete, and intended to be perfected by a subsequent agreement: but in giving a plaintiff, in an action at law, all the benefit arising from equitable considerations that he could obtain in chancery, we must take care that we do not outrun the precedents in the chancery books. On the case disclosed by the evidence, therefore, I am of opinion the plaintiff would not be entitled to recover. As to the correctness of the opinion of the Court on the question, whether the deed tendered contained a power to vend, it is unnecessary to decide. That was a question that did not necessarily arise; for the plaintiff having averred, though defectively, performance of all necessary covenants on his part, without such averment being traversed by the other side, that matter, as well as the intervening of a reasonable time between the tender and the commencement of the suit, (if time were necessary to enable the defendant to perform the covenants on his part, which I am far from being disposed to grant,) was admitted by the pleadings. I have no doubt, however, that a special grant of the right of vending, over and above that of making and using, was unnecessary. It is true, the act of Congress directs, that the grant by the letters patent shall include the right of “ making, constructing, using, and vending to others to he used;” and hence it is inferred, the right of vending is separate from that of making and using. But the exclusive right of fabricating and using necessarily comprises the whole beneficial interest; and the right of parting with it or any part of it is incident to the right of property. The latter was specially secured by the act of Congress ex majori cautela, to obviate all difficulty on the subject. Here the contract contemplated the exclusive right within a certain district, so as to give the defendant the -whole interest: he could therefore dispose of it at his pleasure. Who could call him to account? The case would be different, if he were, by the articles, to be admitted only to a participation in the right; for he could in that case, without a special authority, transfer only his own individual right of making and using, and could not while he retained *445 '.t, introduce another person under it; and the right to assign at all being personal, might, by an express stipulation, even be restrained. Whether a condition not to assign would, in a conveyance of the whole right, though for a district, be void, on the ground of public policy, it is unnecessary to decide, because the deed tendered contains no such restraint; but admitting it might, as contended, be done, still the want of an express power to convey, is very different from an express restraint.
Two miscellaneous, exceptions of'minor importance remain : An exemplification of a patent to Bernard, dated 16th January, 1811, was offered and admitted after it was objected to*. The defendant had pleaded specially, that the patent right which the plaintiff contracted to convey to him was invalid. To this the plaintiff replied, that Bernard had obtained letters patent, dated 17th November, 1810, for a new and useful improvement, being “a steam stilL and water boiler,” and that the right by sundry conveyances was vested in him, and that this was what he contracted to convey. Bernard had in fact obtained two patents, differing not only in date, but also in the name or style of the improvement patented; one being called a steam still and water boiler, and the other a water boiler and steam still. This difference, though trivial, nevertheless served, along with that between the dates, to shew that the patent offered was not the one the validity of which was put in issue. On this state of the pleadings, which seems to have not been adverted to by the Court, I cannot see what the evidence had to do with the question. As it was in every shape irrelevant, it tended to confuse the jury, and was improperly admitted.
After the conclusion of the arguments of counsel the de-> fendant submitted eight points, on which he prayed the Court to instruct the jury, but this the Court refused, because those points had not been made in the argument. A party proposing a question to the Court may, if he thinks proper, wave the benefit of argument; but it is fair, not only towards the opposite counsel but the Court, that the former have an opportunity of being heard before a decision takes place. This as a matter of practice, every Court has power to direct by an appropriate rule ; but, without a rule, I very much doubt their right to refuse to decide. They may call on the opposite party to speak to the question proposed; ■ but they are *446 bound to instruct the jury, if the questions are not entirely irrelevant to the cause.
The judgment must be reversed ; but as the declaration is defective, and it besides appears that the plaintiff cannot in any event recover, the Court will not award a venire facias de novo.
Judgment reversed.